THE UNION PACIFIC RAILWAY COMPANY v. FRANK HARWOOD.

RAILWAY COMPANY—*Duty to Shipper and His Employés—Liable for Negligence.*   Where a shipper of stock has a contract with the railway company for himself to load his stock upon the cars of the company at its stock yards, and a car is furnished him near the shute of the yards for his use, and one of his employés uncouples it from another and pushes it down to the shute for the purpose of loading the stock, the railway company in the management of its other cars owes the duty of exercising ordinary care and diligence to the shipper and his employés while they are engaged in loading the car and doing such other work preparatory to loading as is usual and necessary to do.   *Held, also,* That if the company is guilty of ordinary negligence in leaving a car unattended upon the same track with the car to be loaded by the shipper, without having secured the same by brakes or otherwise to prevent it from moving, and the car is moved by a hard or strong wind against the car about to be loaded and upon an employé of the shipper, and the employé is without fault and free from any negligence or wrongful act on his part directly contributing to the injury, the railway company is liable to him for the result of its negligence.

*Error from Davis District Court.*

ACTION brought by *Harwood* against *The Railway Company,* to recover damages for bodily injuries alleged to have been by him sustained through the negligence of the defendant.   Trial at the March Term, 1883.   The court overruled the defendant's demurrer to the plaintiff's evidence.   The jury found for the plaintiff, and assessed his damages at $3,500. The jury also returned answers to certain questions submitted

by the defendant. The court overruled the motion of the railway company for judgment upon the answers made by the jury to the special questions, and also overruled its motion for a new trial. Judgment on the verdict for plaintiff. The defendant brings the case here. The opinion states the facts.

*J. P. Usher, A. L. Williams,* and *Chas. Monroe,* for plaintiff in error.

*J. R. McClure,* and *James Humphrey,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an action brought by Frank Harwood against the Union Pacific railway company, to recover damages for personal injuries alleged to have been sustained through the negligence of the railway company. The evidence conduced to show that Scott & Thurston, residing at Junction City, in this state, were engaged in the business of shipping live stock over the Union Pacific railway to Kansas City; that Harwood was in the employ of the firm as a clerk; that Scott & Thurston had ordered from the railway company, the day prior to February 28, 1882, a car to ship hogs in; that on said February 28, between 11 and 12 o'clock, they, with their employés, including Harwood, went to the railway stock yards at Junction City to load the hogs in a car; that the train by which the shipment was to be made was due about 12 o'clock; that the car in which the hogs were to be loaded was not on the track when the parties got there; that the first thing Harwood did after he got down to the stock yards, was to drive the hogs from Scott & Thurston's yard into a pen of the Union Pacific stock yards, which had a shute opening into it, through which the hogs could pass or be driven up into the car in which they were to be loaded; that he had assisted Scott & Thurston to load hogs and other stock at these yards for the last four or five years; that an engine hauled two cars past the shute, and left them, in the presence of Harwood, the nearest one being

about 30 feet north of the shute; that the engine was then uncoupled, and pulled up to the switch upon the main track; that the two cars hauled by the engine were left coupled together; that the yardmaster, whose duty it was to station cars, directed these two cars to be left north of the shute; that the yardmaster pointed out to Scott, of the firm of Scott & Thurston, the car nearest the shute as the one he was to use; that there were three or four boards cut out at each end of the car pointed out; that Scott went after the car inspector to come and repair it; that about the same time his employés, either Freeman or Harwood, uncoupled the two cars and moved the car to be loaded by Scott & Thurston by hand down to the shute; that the brakes were not set, nor the wheels blocked of the other car left standing 50 to 80 feet north of the shute; that the car inspector with another man, one Morganfeldt, came down and went inside of the car to fix it; that they closed up the hole in the south end of the car and were going towards the north end; that at this time the wind was blowing quite hard, and it was slight down grade to the shute from the place where the car was left standing and unattended on the north; that Harwood was climbing up the shute to get in with the hogs so as to load them into the car; that one of the hogs got into the car from the shute about this time, and he changed his mind about climbing up, and passed around to the north end of the car to prevent the escape of the hog through the opening in the car; that his face was to the south; that while thus employed, the car left standing north on the track, moved by the wind, came down the track, collided with the car at the shute, and caught Harwood between the drawheads, inflicting upon him severe and painful injuries; that Harwood had no knowledge the brakes were not applied to the car left standing and unattended north of the shute; that Scott asked the yardmaster to place the car for him to load his hogs in at the shute, but it was hauled north past the place and stopped at the yardmaster's signal; that when the company did not place the cars at the shute by the engine to be loaded, the

shippers were in the habit of placing them there; that the company furnished the cars to Scott & Thurston, and the latter always loaded them.

The railway company claims the petition does not state a cause of action; that the court erred in overruling the demurrer to the evidence introduced by the plaintiff below, and further erred in overruling the motion of the railway company for judgment upon the special findings. The principal question presented is, whether, under the allegations of the petition and the evidence introduced upon the trial, Harwood was lawfully upon the track of the railway company at the time he was injured, and therefore whether the railway company owed to him any duty. If he had no legal right to be upon the track, or if he was a mere volunteer there, then of course the law imposed no duty upon the railway company except the general duty which every man owes to others, to do them no intentional wrong or injury. Under the contract between the railway company and Scott & Thurston, the latter were to load the hogs in the car. Scott requested the yardmaster to place the car for him at the shute so that he could load his stock in it. Instead of being placed at the shute, it was hauled, coupled with another, some distance north of it, and then the yardmaster pointed out to Scott this car as the one he was to use. After the yardmaster pointed out to Scott the car for him to load in, he seemingly relinquished all further care of and control over it. After this car had been hauled north of the shute, and the engine hauling it had pulled up to the switch on the main track, Scott & Thurston had no easy or convenient way to place the car at the shute of the stock yards other than by having their employés push it down by hand. Their employés, including Harwood, were not therefore trespassers or volunteers in uncoupling the car and pushing it down to the shute. They were acting for Scott & Thurston, and were lawfully upon the track in charge of one of the cars of the company, with the consent of the railway company. Therefore, to them the railway company.

in the management of its cars owed the duty of exercising ordinary care and diligence. It was the duty of the company to take all necessary and reasonable precautions to render Scott & Thurston, and their employés, safe while engaged in the performance of the work about the car turned over to them for shipping the hogs; and while Harwood, and the other employés of Scott & Thurston, were on the track near the stock yards, attending to the business of Scott & Thurston, about the loading of the hogs in the car set apart for their use, or doing other work preparatory to loading, as was usual and necessary to do, the railway company had no right to endanger their persons or lives by the want of ordinary care in the handling and management of its other cars. If the railway company was guilty of ordinary negligence in leaving a car unattended upon the same track with the car to he loaded by Scott & Thurston, without having secured the same by brakes or otherwise, to prevent it from moving upon the track, and the car was moved against Harwood, by the high wind then prevailing, and the latter was without fault himself, and free from any negligence or wrongful act on his part, directly contributing to the injury, the railway company must be held liable for the injury resulting to him from its negligence. (*Stinson v. Railroad Co.*, 32 N. Y. 333; *Haley v. Railroad Co.*, 7 Hun, 84; *Brown v. Railroad Co.*, 8 La. 45; *Newson v. Railroad Co.*, 29 N. Y. 83. See also *Nicholson v. Railroad Co.*, 41 N. Y. 526.)

Within the law thus stated the petition was not fatally defective. As there was evidence of actionable negligence on the part of the company, the case was not therefore one to be taken from the jury. The question whether there was contributory negligence on the part of Harwood was for the determination of the jury, under proper instructions, as a matter of fact. The jury found against the railway company. The findings of the jury are not, we think, inconsistent with the general verdict, and the motion of the company for judgment upon the findings was properly overruled.

Complaint is made concerning certain testimony admitted tending to show the custom in respect to shippers handling the cars in the stock yards at Junction City. The contract under which Scott & Thurston shipped their hogs on February 28, 1882, required them to load the stock, and as the yardmaster of the company pointed out and turned over to them the car afterward pushed down to the shute for their use, the evidence, under the circumstances, could not have been prejudicial, because it is apparent that the yardmaster expected Scott & Thurston to use the identical car they did use for the shipment of their hogs; and to load it with hogs, it was necessary to be placed at the shute. It was taken north of the shute and stopped, and then turned over for their use. Had Scott & Thurston or their employé Harwood, without the consent of the company, taken the car, or if the yardmaster had informed Scott & Thurston or their employés that the car was not to be uncoupled or moved until repaired, a different question would be presented for our consideration. Further, the evidence tended to show the company furnished the cars and the shippers loaded them, and that when the company left the cars a short distance from the shute, the shippers placed them at the shute, did not vary or modify the written contract in evidence; at most this evidence merely showed the manner of transacting business where the shippers were to load the stock.

The instructions are also greatly criticised; but after a careful examination of all the objections made to them, we do not perceive any error sufficient to authorize us to grant a new trial. The railway company asked that the jury should be instructed not to compare the negligence, or supposed negligence, of the parties. This instruction might very properly have been given; but as the court carefully and fully directed the jury upon all the issues, the omission of this instruction is not sufficient to overturn the judgment. Many rulings of the trial court were commented upon in the case of *Railway Co. v. Peavy*, 29 Kas. 169; but we did not de-

cide in that case that every error referred to was of itself sufficiently material and substantial to cause a reversal of that judgment.

The decision of the court below against the removal of the case to the federal court must be sustained, under the authority of *Railway Co. v. Dyche*, ante, p. 120.

The judgment of the district court must be affirmed.

All the Justices concurring.