THE UNION PACIFIC RAILWAY COMPANY v. PERCY D. HARRIS.

SECTION-MAN — *Negligence of Co-Employé — Liability.* A section-man employed by a railway company to repair its road-bed, and to take up old rails out of its track and put in new ones, who is injured, without his fault, by the negligence of his coëmployé in permitting an iron rail, intended to be placed in the track, to fall upon him while he is assisting in removing the rail from a push-car on the track, is within the terms of § 1, ch. 93, Session Laws of 1874; § 4914, ch. 84, Comp. Laws of 1879.

*Error from Leavenworth District Court.*

ACTION brought July 29, 1883, by *Harris* against *The Union Pacific Railway Company,* to recover for a personal injury. The petition, omitting court and title, was as follows:

"The plaintiff, a citizen of Kansas, complains of the defendant, and avers that the defendant is a corporation existing under and by virtue of law; and plaintiff avers that the said Union Pacific Railway Company, Kansas division, owns and operates a railway, cars, locomotives and engines over its road through the county of Leavenworth, state of Kansas, and is doing business in said county and state; that on and before the 30th day of March, 1883, the plaintiff was in the employ of the defendant and about its business in repairing the said railway track of said defendant at or near Fall Leaf, in said county of Leavenworth and in said state of Kansas; that on said 30th day of March, 1883, the defendant had in its employ in and about said business at said place, some five or six men besides the plaintiff engaged in the said common employment of fixing and repairing the railway track of defendant at such point on said day; that part of the work which plaintiff and his coëmployés were engaged in at said point on said day was in removing rails, replacing rails on and along the ties upon the road-bed of defendant at such place, and in loading and unloading heavy iron rails to be replaced along the ties upon said track; that whilst engaged in such business, and without fault upon his part, and through the negligence and mismanagement of the defendant, its agents, servants, and his coëmployés, a heavy iron rail was carelessly and negligently unloaded and thrown down, and by means thereof the right foot of the plaintiff was greatly injured and his toes crushed and torn off,

and the plaintiff jerked down and twisted so that he was unable to work; by reason thereof he has become permanently injured and disfigured for life; that he was thrown out of employment, and is still unable to work; that he has suffered great pain of body and mind, and has been put to great expense in and about trying to be healed and cured of such great injury: all to his damage in the sum of five thousand dollars.

"Wherefore, plaintiff prays and demands judgment against the said defendant, for and on account of the injuries so received by him as aforesaid, in the sum of five thousand dollars and costs of suit."

On August 20, 1883, the railway company filed its petition for removal of the action to the circuit court of the United States for the district of Kansas. On September 13, 1883, the district court held the bond for removal sufficient in form and amount, and the sureties thereto were approved, but refused to make an order of removal. Trial had at the September Term for 1883, before the court with a jury. The jury found for plaintiff, and assessed his damages at the sum of $2,500. The following questions of fact were submitted to the jury, on request of plaintiff, and the jury returned in writing their answers as follows:

"Q. 1. Did the plaintiff's coëmployés negligently permit the iron rail to fall, by means whereof the plaintiff was injured? A. Yes.

"Q. 2. Was the plaintiff guilty of any negligence contributing to his injury? A. No."

The following questions of fact were submitted to the jury on request of defendant; the jury returned answers in writing as follows, to wit:

"Q. 1. Was the injury to plaintiff by him complained of caused solely by the act of his coëmployés, Crothers and Wetzel, in removing a rail from a push-car to the ground? A. Yes.

"Q. 2. Were not the plaintiff and his coëmployés, at the time of the accident and injury sustained by him, section-men upon the railroad of the defendant, in the service of the defendant, and was it not their duty to repair the track, and in keeping the track in repair was it not part of their duty to take old rails out of the track and put in new ones? A. Yes.

27—33 KAS.

"Q. 3. Were not the plaintiff and his coëmployés engaged in the service necessary to accomplish the taking out old rails and putting in new, at the time he was injured? A. Yes.

"Q. 4. Were not Mateman, Crothers and Wetzel coëmployés of the plaintiff at the time of the injury and in handling the rail in question, and were they not all engaged in the same labor? A. Yes.

"Q. 5. Was not the accident and injury to plaintiff caused solely by Crothers and Wetzel letting their end of the rail fall before word was given to heave the rail? A. Yes.

"Q. 6. In handling rails, as the one in question was handled, was it the practice for all parties to hold on to the rail till one of the parties should give the word to heave the rail? A. Yes.

"Q. 7. Did not the rail leave the hold of Crothers and Wetzel before any word was given to heave the rail? A. Yes.

"Q. 8. Do the jury find from the evidence whether Crothers and Wetzel purposely heaved or let go the rail, or whether it fell from their hands accidentally, and if they did so, state which? A. Neither purposely nor accidentally.

"Q. 9. Does the evidence show that it was any part of the duty of plaintiff to ride upon the cars of defendant? A. No."

On September 18, 1883, the *Railway Company* filed its motion asking the court to render judgment in its favor upon the special questions and answers returned by the jury, notwithstanding the general verdict. On October 6, 1883, the court overruled this motion, and rendered judgment in accordance with the general verdict for the sum of $2,500, together with all costs. The *Railway Company* excepted, and brings the case here.

*J. P. Usher*, for plaintiff in error.

*Lucien Baker*, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: The petition in this case alleged that the plaintiff, at the time of the injury complained of, was in the employ of the railway company and about its business in repairing its track in Leavenworth county, in this state. The special findings also show that the plaintiff and his coëmployés were section-men, engaged at work upon the railway of defend-

ant, as alleged in the petition; that it was their duty in repairing the track to take the old rails out of the track and put in new ones; that the plaintiff was injured by the negligence of his coëmployés in removing an iron rail from a push-car to the ground; that his coëmployés negligently permitted the rail to fall upon his right foot; that in handling the rails for the purpose of repairing the track, it was the practice for all parties handling the same to hold on to the rail until one of the parties gave the word to throw the rail; that the rail left the hold of two of the employés handling the same with the plaintiff, before any word was given to throw the same.

To the following question, "Does the evidence show that it was any part of the duty of plaintiff to ride upon the cars of defendant?" the jury, in their special findings of fact, answered "No." At the common law, it is well settled that the railway company would not be liable to the plaintiff for the damages sustained by him, under the findings of fact. The rule of the common law, however, has been changed in this state by the statute of 1874, § 1, ch. 93. This statute reads:

"Every railroad company organized or doing business in this state shall be liable for all damages done to any employé of such company, in consequence of any negligence of its agents, or by any mismanagement of its engineers or other employés, to any person sustaining such damage."

The question therefore arises, whether, under the statute of 1874, the plaintiff is entitled to recover for the personal injuries inflicted upon him through the negligence of his coëmployés. The contention on the part of the railway company is, that the employé, in order to recover under the statute, must have received his injury through the negligence of a coëmployé while they, or either of them, were in the use and operation of the railway; and it is the further contention, that the findings in this case do not establish that either the injured employé or the negligent ones were engaged in the use and operation of the railway. As conclusive, counsel cites *Smith v. Railway Co.*, 59 Iowa, 73; *Malone v. Railway Co.*, 61 Iowa, 326. This state adopted the statute of 1862 of Iowa. The

statute of that state, however, was changed in 1872 so as to allow employés of railway companies to recover against the companies for injuries received from the negligence of coëmployés, only "when such willful wrongs are in any manner connected with the *use and operation* of the railroad so owned and operated, or on or about which they shall be employed." The code of Iowa for 1873, now in force, slightly changed the statute of 1872, but embraces the words, "when such wrongs are in any manner connected with the *use and operation* of any railway." (Iowa Code of 1873, § 1307, p. 239.) The decisions of the supreme court of Iowa construing the statute of 1872 and 1873 are therefore not strictly applicable to the case at bar.

In *Malone v. Railway Co.*—decided in December, 1884— Mr. Justice Read, after referring to the Iowa statute of 1862, speaking for the court, said:

"But the subsequent legislation has established a new rule as to the class of acts for which the companies are liable, so that to entitle an employé now to recover against the company for injuries which he has sustained in consequence of the negligence, mismanagement or willfulness of a coëmployé, he must show, first, that he belonged to the class of employés to whom the statute affords a remedy; and second, that the act which occasioned the injury was of the class of acts for which a remedy is given." (19 Reporter, 238.)

While the statute of 1862 of Iowa was in force, the supreme court of that state decided, as the statute applied to all railroad corporations then in existence or which might thereafter exist, therefore that the law was general and of uniform operation throughout the state. (*McAunich v. Railway Co.*, 20 Iowa, 338.) The limitation placed upon the statute by that decision was as follows: "If there is an employer and employé, but not business of a railroad company to be engaged in, then the case is not within the act." (*Railway Co v. Haley*, 25 Kas. 53.) With this construction and limitation of the statute, we fully concur.

We are, however, referred to *Deppe v. Railway Co.*, 36 Iowa, 52, as limiting the statute of 1862 to employés engaged in the

business of *operating a railway*.   In that case the employé was injured by the falling of an impending bank, while shoveling dirt.   The employé was held to be within the protection of the statute, yet he was not injured "through the negligence of a coëmployé while they, or either of them, were in the actual operation of the cars or trains of the railway."   It is true that the connection of the injured employé with the dirt train was stated as the ground for the affirmance of the judgment, but beyond the conclusion that the employé in that case was within the terms of the statute, much of the language of the opinion seems to be *obiter*, therefore not authority; other portions evidently are based upon provisions in the Iowa constitution not embraced in the constitution of this state.   See also, *Ditberner v. Railway Co.*, 47 Wis. 138, where a section-hand employed by the railway company was held to be entitled to recover for personal injuries under the statute of that state making railway companies liable for injuries to employés, from the negligence of coëmployés.

In the case before us, at the time of the injury complained of, plaintiff below was in the employ of the railway company, and was actually engaged in the business of the company upon its road-bed and track, in the work of replacing old rails of the track with new ones, and while assisting in removing a rail from a push-car upon the track, he was injured without fault on his part by the negligence of his coëmployés.   With our construction of the statute, there is nothing in the petition or findings of fact to prevent his recovery.

Finally, our attention is called to the finding of the jury that the iron rail which fell upon the plaintiff was not thrown purposely or accidentally, and therefore it is insisted there was no culpable negligence on the part of the coëmployés.   The findings show that the dropping of the rail by the coëmployés was not done intentionally, or by mere accident.   It follows, therefore, under the general verdict, that the coëmployés were guilty of negligence in letting the rail fall.

The ruling of the district court in refusing to order a re-

moval of the case to the federal court was properly denied. (*Railway Co. v. Dyche*, 31 Kas. 120.*)

The judgment of the district court will be affirmed.

All the Justices concurring.

3. ———— *Verdict and Judgment, Sustained.* And *held*, in the present case, under the evidence and the foregoing rule, that the verdict of the jury and the judgment of the trial court cannot be set aside by the supreme court, but must be sustained.

---

[*REPORTER'S NOTE.—In the case of *U. P. Rly. Co. v. Dyche*, 31 Kas. 120, the Supreme Court held that the court below properly denied the petition of the defendant railway company, filed for a removal of the action to the federal court. The court made the same ruling in *U. P. Rly. Co. v. Harwood*, 31 Kas. 388, 394. This latter case the *Railway Company* removed to the Supreme Court of the United States, where it was heard with six other similar cases, at the October Term, 1884, and decided May 4, 1885. The judgments were reversed in all the cases, the court holding that corporations of the United States, created by and organized under acts of Congress like the plaintiffs in error in these cases, are entitled as such to remove into the circuit courts of the United States suits brought against them in the state courts, under and by virtue of the act of March 3d, 1875, on the ground that such suits are suits "arising under the laws of the United States." This decision of the U. S. Supreme Court was made after the decisions rendered by the Kansas Supreme Court in *U. P. Rly. Co. v. Harris*, supra, and in *U. P. Rly. Co. v. Diehl*, post. In the latter case the plaintiff in error filed a motion in the Kansas Supreme Court to revoke and set aside its judgment rendered therein, affirming the judgment of the district court. June 2, 1885, the court allowed said motion, ordered that the judgment of affirmance be revoked; that this cause be remanded to the district court of Riley county, with the direction to that court to set aside the judgment therein in favor of Diehl, and to cause the case to be removed to the Circuit Court of the United States for trial.]