CALLAHAN v. ST. LOUIS MERCHANTS' BRIDGE TERMINAL RAILROAD COMPANY, Appellant.

In Banc, December 10, 1902.*

1. **Railroads:** FELLOW SERVANT: LIABILITY. Under the Missouri statute declaring "that every railroad corporation owning or operating a railroad in this State shall be liable for all damages sustained by any agent or servant thereof while engaged in the work of operating such railroad, by reason of the negligence of any other agent or servant thereof," an employee of the company who is injured "while engaged in the work of operating such railroad, by reason of the negligence of any other servant," may recover from the company.

2. ———: ———: CONSTITUTIONAL. Said statute is constitutional. It is not such a narrow classification of the employments of railroad servants as to make it violative of the fourteenth amendment to the Federal Constitution.

3. ———: ———: SECTION HAND. Under the Missouri statute a section hand, who was injured while engaged at work as such, may recover from the railroad company for injuries resulting from the negligence of other section hands. The statute does not limit the recovery to injuries inflicted by an engineer or other employee while actually moving a train.

4. ———: ———: ———: WHILE OPERATING ROAD. Plaintiff was a member of a section gang that was engaged in repairing the track by taking out old ties and putting in new ones. When the old ties were taken out they were thrown down from a bridge fifty feet high over a street. Plaintiff was stationed below to warn passers-by and to remove the ties from the street. When the gang on the

---

*NOTE:—First decided in Division One, June 10, 1902. Transferred to Court In Banc, and divisional opinion there adopted, December 10, 1902.

bridge were ready to throw down a tie they notified the plaintiff and he signified to them that "the coast was clear," and they were not to throw the tie down until he so signified, but when a small child appeared on the street and was in a place of peril, plaintiff went to her, and while engaged in removing her, the gang on the bridge, without giving him any notice and without any notice from him to them, threw down a tie which struck the plaintiff on the leg and so injured it that it had to be amputated. *Held*, that plaintiff was within the meaning of the fellow-servant statute, injured "while engaged in the work of operating such railroad"; and under that statute the railroad company is liable for his injuries.

5. ———: ———: WHAT SERVANTS ARE INCLUDED. Under the fellow-servant law (sec. 2873, R. S. 1899) section gangs on railroads are included in the class of servants embraced in the act, and a member of such a gang who is set to warn passers-by of the danger incident to the throwing by its other members of ties from a high bridge over a public street and to remove the ties from the street after they have thus been thrown over, is included in that class.

6. ———: ———: "OPERATING RAILROAD": INSTRUCTION. The question of whether a section hand is engaged "in the operation of a railroad" when injured, is a mixed question of law and fact, and hence an instruction which requires the jury to find the fact to be that the plaintiff was "a section hand laborer, aiding in the work of operating defendant's road", and declaring that if such was the fact he is entitled to recover, is not erroneous in submitting a question of law to the jury, although perhaps not as clearly worded as might be desired.

Appeal from St. Louis City Circuit Court.—*Hon. Franklin Ferris*, Judge.

AFFIRMED.

*John H. Overall* for appellant.

(1) Appellant is not liable in this case because plaintiff was not, within the meaning of section 2873, Revised Statutes 1899, engaged in the work of operating its railroad. (2) Plaintiff's co-employees, through whose negligence he was injured, were not engaged in the work of operating appellant's railroad. (3) The fellow-servant act of Missouri having been taken from that of Iowa, is presumed to have been

adopted with the construction given to it by the courts of Iowa.   State v. Chandler, 132 Mo. 161; Collins v. Wilhoit, 35 Mo. App. 590; Skouten v. Wood, 57 Mo. 382; Kimball v. Davis, 52 Mo. App. 208; Bank v. Hoffman, 74 Mo. App. 208.   (4)   The uniform construction given to the act by the courts of Iowa is that it applies only to those employees whose work has direct connection with the movement of trains, locomotives or cars.   Deppe v. Railroad, 36 Iowa   52; Schroeder v. Railroad, 41 Iowa   344; Potter v. Railroad, 46 Iowa 399; Pyne v. Railroad, 54 Iowa 223; Bucklew v. Railroad, 64 Iowa 603; Foley v. Railroad, 64 Iowa 644; Malone v. Railroad, 65 Iowa 417; Luce v. Railroad, 67 Iowa 75; Matson v. Railroad, 68 Iowa 22; Stroble v. Railroad, 70 Iowa 555; Pierce v. Railroad, 73 Iowa 140; Larson v. Railroad, 91 Iowa 81; Keatly v. Railroad, 94 Iowa 685, 103 Iowa 282; Canon v. Railroad, 101 Iowa 613; Akeson v. Railroad, 106 Iowa 54; Reddington v. Railroad, 108 Iowa 96; Railroad v. Artery, 137 U. S. 507.   And a like construction has been given the act in Minnesota, in Kansas and in Texas.   Lavalle v. Railroad, 40 Minn. 249; Johnson v. Railroad, 43 Minn. 222; Pearson v. Railroad, 47 Minn. 9; Weisel v. Railroad, 79 Minn. 245; Railroad v. Medaris, 60 Kan. 151; Lawrence v. Railroad, 61 S. W. 342.   (5)   Any other construction of the act would render it violative of the Constitution of Missouri and of the fourteenth amendment to the Federal Constitution.   State v. Loomis, 115 Mo. 314; State ex rel. v. Pike county, 144 Mo. 280; Covington & Lex. Turnp. Co. v. Sanford, 164 U. S. 592; Railroad v. Ellis, 165 U. S. 150; Paddock v. Railroad, 155 Mo. 537; Akeson v. Railroad, 106 Iowa 54; Railroad v. Mackey, 127 U. S. 205; State ex rel. v. Lewis, 101 U. S. 22; Yick Wo v. Hopkins, 118 U. S. 356; Hayes v. Missouri, 120 U. S. 68; State ex rel. v. Ashbrook, 154 Mo. 375; In re Flukes, 157 Mo. 125; Millett v. People, 117 Ill. 294; Stimson v. Muskegon Booming Co., 100 Mich. 347; In re Eight Hour Law, 21 Colo. 29; Walley v. Kennedy, 2 Yerg. (Tenn.) 554. (6) The statute, being in derogation of the common law,

will not be extended to cover cases which do not fairly come within its meaning and are not necessary to effectuate its beneficent purpose. State v. Clinton, 67 Mo. 380; Fisher v. Blight, 2 Cranch 399; King v. Poor Law Commissioners, 6 Ad. & Ell. 7; Steppacher v. McClure, 75 Mo. App. 139; Schultz v. Railroad, 36 Mo. 13; Smith v. Haworth, 53 Mo. 88; Sazarin v. Railroad, 153 Mo. 485. (7) The words "the work of operating such railroad" should be taken in their ordinary meaning and usual sense. And the word "operating" is intended to exclude the words "construction" and "maintenance." State v. Jones, 102 Mo. 307; Warren v. Barber Paving Co., 115 Mo. 576; State ex rel. v. Johnson, 132 Mo. 109; State ex rel. v. Slover, 126 Mo. 660. (8) The purpose and object of the statute furnish a key to its interpretation, as also the usages existing at the date of its enactment. Ross v. Railroad, 111 Mo. 25; Carson-Rand Co. v. Stern, 129 Mo. 387; Bank v. Skeen, 101 Mo. 683. (9) The first instruction given for plaintiff is erroneous because it leaves it to the jury to determine whether plaintiff was "engaged in the work of operating the railroad," thus leaving to the jury the true construction of the statute.

*A. R. Taylor* for respondent.

The first point made for a reversal by the appellant is untenable. The plaintiff's first instruction does not submit to the jury the question of law as to whether or not the plaintiff, as a section-hand laborer, was engaged in "aiding in the work of operating defendant's railroad at the bridge approach of Ferry street, in the City of St. Louis," but on the contrary the instruction assumes as a matter of law that a section-hand laborer, while engaged in his duties as such, is aiding in the operation of a railroad, within the meaning of the fellow-servant law. The court, in giving that instruction, declared that a section-hand laborer for a railroad company is, under the fellow-servant law of this State "engaged in the work of operating a railroad." The

language of that act is different from any one of the fellow-servant acts of the United States. The language of this act, all will agree, includes the plaintiff as section hand, within the terms of its protection, if his work and duties were to aid in the operation of the defendant's railroad. To cut off from the protection of the act that vast body of railroad employees engaged in the work of keeping the track in repair would sever the body from the head, and leave the benefit of the act for only that comparatively few who are connected with the running of trains. The Legislature, by the act in question, clearly intended to give protection to every employee directly connected with the work of running trains and of keeping in order the tracks whereon the trains should run. This would include all trainmen, all trackmen, all watchmen, all targetmen, all bridge-repairers, station-men and others. These are one and all necessary for the operation of the railroad, and the Legislature, in the exercise of its discretion, determined to give this protection to the whole of this class of employees. If the section man be not engaged in his work in aiding the operation of the railroad, then he can not recover, whether run over by an engine or injured in any other way. Here we find the distinction between the Missouri and Iowa statutes. There is a marked contrast between the Missouri and Iowa statutes, so much so that the scope of the protection afforded is nearly the opposite of each other. In the Iowa statute, as construed by its Supreme Court, the protection is only given to employees who are injured by being run over by cars, or by some negligence about the engines or cars. The statute, in itself, will bear the construction placed upon it by the Supreme Court of Iowa. Though vague in its language, that statute seems to limit the protection to cases where the injured servant is the victim of negligence in the operation of engines and cars, and this would preclude a recovery under the construction given the Iowa statute by its Supreme Court, unless the servant injured owed his injury to the negligent act of some servant in managing

the engine and cars.  Just the opposite is the plain language of the Missouri statute.  Johnson v. Railroad, 43 Minn. 222, is the doctrine of the Supreme Court of Minnesota on the question, and is no authority on the question before the court, when the Supreme Court of the United States has held differently on the question.  The decisions of the United States Supreme Court, instead of denying to the States the power to pass laws for the protection of railroad employees, and other similar laws, have uniformly upheld such acts.  Railroad v. Humes, 115 U. S. 521; Railroad v. Mackey, 127 U. S. 210.

COURT IN BANC.

PER CURIAM.—The following opinion heretofore rendered by Division One is hereby adopted as the opinion of the Court in Banc.  *Burgess, C. J.,* and *Sherwood, Brace, Valliant,* and *Gantt, JJ.,* concur; *Robinson, J.,* dissents.

MARSHALL, J.—This is an action predicated upon section 2873, Revised Statutes 1899, for damages for personal injuries, by the plaintiff, an employee of the defendant, alleged to have been received in consequence of the negligence of the plaintiff's fellow-servants, employees of the defendant.  The plaintiff recovered a judgment for $6,500 in the circuit court, and the defendant appealed.

The pertinent allegations of the petition are as follows:

"That the defendant was a corporation and operated a railroad in the State of Missouri.  That, on November 15, 1898, the plaintiff was in the service of the defendant, aiding in operating its railroad at or near the bridge approach over Ferry street, in the city of St. Louis.  That it was the duty of the plaintiff at said time to watch that people or vehicles were not injured by the fall of ties which were being removed by

defendant's employees from its roadbed, and thrown down about fifty feet to the surface of Ferry street, and also to remove such ties from the street. That the rule and custom for doing the work was for the men above, before throwing a tie down to the street, to give notice to the man below that a tie was to be thrown, and then wait for a signal from him before throwing the tie that it was right and safe to throw the tie, thus enabling plaintiff to warn passers-by out of danger and to keep out of danger himself. That, on the day in question, whilst the plaintiff in the due discharge of his said duty was warning off and removing a child from said street, where it was in peril of a falling tie should one be thrown, the defendant's servants above carelessly, and without giving any warning of their intention to throw down a tie, and without receiving any signal from plaintiff that it was safe to do so, threw down a tie, which struck and injured the plaintiff."

There was a further assignment of negligence, in that defendant's acting foreman negligently directed the tie to be so thrown without the usual signals.

The answer is a general denial coupled with the following special pleas:

"Further answering plaintiff's petition defendant states: That the injuries complained of by plaintiff in said petition were produced by the negligence of plaintiff contributing to the cause thereof; that plaintiff's fellow-servants gave warning of their intention to lower the tie mentioned in plaintiff's petition, and plaintiff failed to heed the same; that it was usual and customary in the lowering of the ties mentioned in plaintiff's petition for plaintiff to notify his co-employees of the approach of pedestrians or vehicles, so that such ties might be held by said co-employees until such pedestrians or vehicles had passed, and plaintiff failed to give such notice in this instance, and by reason of the failure of plaintiff to so warn the employees of defendant of the approach of the pedestrian mentioned in plaintiff's petition, as was his duty, such tie was lowered and thrown down, whereby plaintiff

was injured; that plaintiff failed and neglected to take reasonable and ordinary precautions to observe his surroundings or to avoid the obvious dangers of his said situation, and thereby said injury was directly occasioned by his own omission to use ordinary care at and immediately before the time of his said injury.

"Further answering, defendant says that the injury complained of by plaintiff was occasioned by a danger incident to his said employment and which plaintiff assumed in entering upon said employment.

"Further answering, defendant says that if the injury complained of by plaintiff was occasioned by the negligence of defendant's servants as alleged in plaintiff's petition, the said servants were fellow-servants of plaintiff, and plaintiff and said fellow-servants were not at the time mentioned in plaintiff's petition engaged in the work of operating defendant's railroad, and therefore defendant is not liable therefor."

The reply is a general denial.

The trial disclosed the following facts: the defendant's railroad crosses Ferry street, in the city of St. Louis, by an overhead bridge which is some fifty feet above the level of the street. The plaintiff was a member of a section gang that was engaged in repairing the railroad, by taking out old ties and putting in new ones. When the old ties were taken out, they were thrown down onto Ferry street, instead of being carried away. The plaintiff was stationed on Ferry street to warn passers-by of the danger, and to remove the ties that were thus thrown upon the street. When the gang on the bridge were about to throw down a tie, they notified the plaintiff of their intention and he signified to them whether or not the "coast was clear," and they did not throw the tie unless he so signified. While so engaged in such work, a small child appeared on Ferry street and was in a place of peril. The plaintiff went to her and while engaged in removing her, the gang on the bridge threw a tie down on the street, which struck the plaintiff on the leg and injured it so that it had to be

amputated.   The gang on the bridge gave the plaintiff no notice of their intention to throw the tie, and the plaintiff did not signify to the gang on the bridge that it was unsafe to do so, nor that the child was in peril, nor that he was going to or had gone to the child to remove it from its perilous position.

Two legal propositions present themselves upon this record; first, who are embraced in the provisions of section 2873, Revised Statutes 1899, and, second, does the plaintiff come within such classes; and of these in their order.

## I.

Who are embraced in the provisions of section 2873, Revised Statutes 1899?

That section is as follows:

Sec. 2873, R. S. 1899: "That every railroad corporation owning or operating a railroad in this State shall be liable for all damages sustained by any agent or servant thereof while engaged in the work of operating such railroad, by reason of the negligence of any other agent or servant thereof; provided, that it may be shown in defense that the person injured was guilty of negligence contributing as a proximate cause to produce the injury."

The defendant contends that this law does not embrace every employee of a railroad, but that it applies only to such employees of a railroad as are subjected, by the character of the work they are employed to do, to the hazards incident to the running of a train. And, furthermore, the defendant contends that if the law is construed to cover railroad employees who are not subjected to such hazards, but are only subject to such risks as would be incurred by the employees of any other person or corporation when engaged in similar work, then the law violates the equality clause of the Federal Constitution, in that, it subjects the defendant to a liability to its employees that is not im-

posed upon any other person or company under similar conditions.

On the other hand, the plaintiff contends that the law embraces not only the employees who are actually employed in moving a train, but also all those whose work is directly essential to enable the trains to move. And as applied to this case that it embraces a section gang engaged in repairing the track to enable the trains to safely run over it, and that the plaintiff was a member of such section gang, and that his duty was as directly connected with such work as was the work of any of the other members of the gang that were working upon the bridge.

This case is one of first impression in this court. The only case bearing on this question that has heretofore been adjudicated in this State is Stubbs v. Railroad, 85 Mo. App. 192. In that case the Kansas City Court of Appeals, speaking through ELLISON, J., held that the law embraced members of a section gang that was engaged in removing old rails and putting in new ones, and there one of the gang was permitted to recover for injuries received by the negligence of another member of the gang in suddenly dropping one end of a rail which he and the plaintiff were carrying.

It is all-important to keep in mind the language of the statute. It is that the railroad shall be liable for all damages sustained by any agent or servant thereof ''while engaged in the work of operating such railroad,'' by reason of the negligence of any other agent or servant thereof.

Defendant contends that this statute was taken from the laws of Iowa, and that the interpretation of the courts of that State construing their law, must be borrowed from that State along with the law itself, and that the courts of Iowa hold that the law only embraces such employees as are injured by the actual moving of trains, and, therefore, the same construction should be placed upon our statute.

The chief difficulty encountered in such a line of reasoning is that there is nothing to show that our law

was borrowed from or modeled after the Iowa law. The language of our law is quite different from the Iowa statute. The first statute upon this subject that was adopted in Iowa was the Act of 1862, which was as follows:

"Every railroad company shall be liable for all damages sustained by any person, including employees of the company, in consequence of any neglect of the agents or any mismanagement of the engineers or other employees of the corporation to any person sustaining such damages."

The courts of that State held that this act was limited to such employees as were injured by the negligence of fellow-servants while engaged in moving trains, and that any other construction of the act would constitute class legislation and would violate the equality clause of the Federal Constitution. [Deppe v. Railroad, 36 Iowa 52.]

Afterwards, in 1873, the Legislature of that State amended the law so as to make it read as follows:

"Every corporation operating a railway shall be liable for all damages sustained by any person, including employees of such corporation, in consequence of the neglect of the agents, or by any mismanagement of the engineers or other employees thereof, and in consequence of the willful wrongs, whether of commission or omission, of such agents, engineers or other employees, when such wrongs are in any manner connected with the use and operation of any railway, on or about which they shall be employed."

In Foley v. Railroad, 64 Iowa 644, it was argued that this amendment did not change the Act of 1862 as to liability for mere acts of negligence, but that it simply superadded a liability for willful wrongs. But the Supreme Court held otherwise, and said that it could not have been the intention of the Legislature to create one liability for negligent wrongs and a different liability for willful wrongs, and then adhered to the rule laid down in the Deppe case. And the same rule has obtained in that State ever since. [Molone v. Railroad,

65 Iowa 417; Reddington v. Railroad, 108 Iowa 96.]

It will be observed that in both of the Iowa acts the railroad was made liable for damages sustained by any person, including employees, "in consequence of any neglect of the agents, or any mismanagement of the *engineer* or other employee of the corporation to the person sustaining such damages." Our statute is quite different, for it makes the railroad liable to any employee for damages sustained by him, "while engaged in the work of operating such railroad, by reason of the negligence of any other agent or servant."

Under the Iowa cases any employee who is injured by another employee's negligence while moving a train, can recover. It matters not what work the injured employee is doing. The test is, was he injured in consequence of the negligence of another employee or *engineer* in moving a train?

Under our statute to entitle the injured servant to recover it must be shown that he sustained his injuries "while engaged in the work of operating such railroad," "by reason of the negligence of any other agent or servant."

This is very different from the Iowa statute. Here the injured person must be injured "while engaged in the work of operating such railroad." Injured, not necessarily by the negligence of another employee or engineer while actually moving a train, but injured by the negligence of any other employee of the railroad. In Iowa the injury must have been inflicted by the moving of a train. In Missouri the person injured must have been actually engaged in the work of operating such *railroad,* not necessarily in operating the *train.* The two statutes therefore are almost the antitheses of each other, and our law can not properly be said to have been taken from or modeled after the Iowa law. The major premise of the defendant's syllogism, therefore, fails and hence the conclusion falls with it.

The fellow-servant laws of other States and the

judicial interpretations thereof, afford interesting and legitimate subjects of reference in construing our law on that subject.

The statute of Kansas is almost identical with the statute of Iowa of 1862. It is as follows: "Every railroad company organized or doing business in this State shall be liable for all damages done to any employee of such company, in consequence of any negligence of its agents, or by any mismanagement of its engineers or other employees, to any person sustaining such damage."

The Kansas courts, however, place a very different construction upon their statute from that placed upon the Iowa statute by the courts of that State. The rule in Kansas is that to entitle an injured employee to recover, it is necessary for him to show that he was injured when performing a service for the railroad that was necessary to the use and operation of the road, and it is not essential that he show that the injury was caused by a fellow-servant while moving a train. [Railroad v. Vincent, 56 Kan. 347.] This case is similar in all essential respects to the case of Stubbs v. Railroad, 85 Mo. App. 192. See, also, Trust Co. v. Thomason, 25 Kan. 1, where one section hand's negligence caused injury to another section hand, while both were on a handcar; Railroad v. Harris, 33 Kan. 421, where one section hand's negligence injured another section hand, while the two were taking out old rails and putting in new ones; Railroad v. Koehler, 37 Kan. 463, where the negligence of one employee while unloading a car, caused a rail to fall on another employee similarly employed; Railroad v. Brassfield, 51 Kan. 167, where a section gang was unloading ties from a car for the purpose of repairing the track and one negligently let a tie fall on another employee and injured him; Railroad v. Pontius, 52 Kan. 264, where one bridge carpenter negligently injured another while loading timbers on a car to be carried to another part of the road to be used in a bridge. The case last cited went to the Supreme Court of the United States and is reported in

157 U. S. 211. In that case the Supreme Court of the United States, speaking through its Chief Justice FULLER, after setting out the Kansas statute, said:

"In Mo. Pac. Railway Co. v. Mackey, 33 Kansas 298, the validity of this law was drawn in question on the ground of repugnancy to the Constitution of the United States and its validity sustained. The case was brought here on error and the judgment of the State court affirmed. [Mo. Pac. Railway Co. v. Mackey, 127 U. S. 205.] As to the objection that the law deprived railroad companies of the equal protection of the laws, and so infringed the fourteenth amendment, this court held that legislation which was special in its character was not necessarily within the constitutional inhibition, if the same rule was applied under the same circumstances and conditions; that the hazardous character of the business of operating a railroad seemed to call for special legislation with respect to railroad corporations, having for its object the protection of their employees as well as the safety of the public; that the business of other corporations was not subject to similar dangers to their employees, and that such legislation could not be objected to on the ground of making an unjust discrimination since it met a particular necessity and all railroad corporations were, without distinction, made subject to the same liabilities. It is now contended that the plaintiff was a bridge-builder; that the legislation only applied to employees exposed to the peculiar hazards incident to the use and operation of railroads; that the railroad company could not be subjected to any greater liability to its employees who were engaged in building its bridges than any other private individual or corporation engaged in the same business; and that the statute had been so construed in this case as to make the company liable to its employees when engaged in building its bridges, notwithstanding bridge-building was not accompanied, and had not been treated by legislation as accompanied by peculiar perils, thus discriminating against the particular corporation irrespective of the character of the employ-

ment, in contravention of the fourteenth amendment.

"But the difficulty with this argument is that the State Supreme Court found upon the facts that, although the plaintiff's general employment was that of a bridge carpenter, he was engaged at the time the accident occurred, not in building a bridge but in loading timbers on a car for transportation over the line of defendant's road; and Missouri Pacific Co. v. Haley, 25 Kan. 35; Union Pacific Railway v. Harris, 33 Kan. 416; and Atchison, Topeka, etc., Railroad Co. v. Koehler, 37 Kan. 463, were cited, in which cases it was held that a person employed upon a construction train to carry water for the men working with the train, and to gather up tools and put them in the caboose or tool car; a section man employed by a railroad company to repair its roadbed and to take up old rails out of its track and put in new ones; and a person injured while loading rails on a car to be taken to other portions of the company's road, were all within the provisions of the act in question; and the court said: 'In this case the plaintiff was injured while on a car assisting in loading timbers to be transported over the defendant's road to some other point. The mere fact that the plaintiff's regular employment was as a bridge carpenter does not affect the case, nor does it matter that the road was newly constructed, nor whether it was in regular operation or not. The injury happened to the plaintiff while he was engaged in labor directly connected with the operation of the road, and the statute applies even though it should be given the construction counsel places on it.' And see Chicago, Rock Island & Pacific Railway Co. v. Stahley, 62 Fed. Rep. 363."

In Railroad v. Stahley, 27 U. S. App. 157, a railroad employee was injured by the negligence of his fellow-employees in letting fall one end of a heavy driving-rod that they were carrying to attach to a new locomotive that was standing in a roundhouse, at Horton, Kansas, and which they were putting in order for use on the road. Mr. Justice BREWER tried the case on the circuit, and held that notwithstanding the Kan-

sas fellow-servant law was taken from the Iowa statute, the Federal courts would follow the interpretation put on the Kansas statute by the courts of that State, rather than the interpretation put on the Iowa statute by the courts of Iowa. Accordingly a judgment for the plaintiff was allowed to stand notwithstanding the injury was not inflicted by the negligence of a fellow-servant while moving a train.

The fellow-servant statute of Georgia is as follows: "A railroad company shall be liable for any damage done to persons, stock or other property by the running of the locomotive or cars or other machinery of such company, or for damage done by any person in the employment and service of such company, unless the company shall make it appear that their agents have exercised all ordinary and reasonable care and diligence, the presumption in all cases being against the company."

The courts of that State hold that an injured employee may recover for injuries sustained by reason of the negligence of a fellow-servant if they were engaged in a work that was necessary to be done to enable the railroad company to operate the railroad; and that the right to recover was not limited to cases where the injury was caused by the running of a train. [Thompson v. Railroad, 54 Ga. 509; Baker v. Railroad, 68 Ga. 702; Railroad v. Ivey, 73 Ga. 504.]

In the case last cited one bridge-builder was killed by the negligence of another bridge-builder, while they were building a bridge across the Oconee river, at Athens, to enable the trains of the railroad to cross the river and land passengers and freight at a new depot in the town.

The Supreme Court of Wisconsin had the fellow-servant law of that State before it, in the case of Ditberner v. Railroad, 47 Wis. 138, and speaking through Lyon, J., said:

"The learned counsel for the defendant maintains that the statute under which this action was brought (chapter 173, Laws of 1875) is unconstitutional and

void. The statute is as follows: 'Every railroad company operating any railroad or railway, the line of which shall be situated in whole or in part in this State, shall be liable for all damages sustained within this State by any employee, servant or agent of such company, while in the line of his duty as such, and which shall have been caused by the carelessness or negligence of any other agent, employee or servant of such company, in the discharge of, or for failing to discharge, their proper duties as such; but this act shall not be construed so as to permit a recovery where the negligence of the person so claiming to recover materially contributed to the result complained of.'

"It is claimed that this statute violates that principle of constitutional law which prohibits unequal and partial legislation on general subjects, and is therefore void. It is conceded that the act would be a valid exercise of legislative power were its provisions restricted to cases of injury caused by the negligent operation of railways. But it is assumed that the statute is not so restricted; that by its terms it seeks to make a railway company liable for an injury to an employee caused by the negligence of another employee, although the negligent act may have no connection with the operation of the railway of the company. The argument is, that because the same liability is not imposed upon other corporations, the statute is void within the rule of Durkee v. Janesville, 28 Wis. 464.

"Iowa cases have been cited which seem to assert the doctrine contended for. The statute of that State under which those cases were decided, corresponding with our chapter 173 of 1875, limits a recovery to cases where the injuries were caused by the negligent operation of railways. In view of that limitation, the assertion of the above doctrine in those cases seems to be *obiter*. It was unnecessary that the court should determine what its ruling would be were a different statute under consideration, or to rule upon a hypothetical statute. We entertain the highest respect for that learned and very able court, and can usually approve

its judgments, but are unable to agree with it on this subject. Yet we concur in the judgments of that court in these very cases. We only reject the views stated *arguendo*, and which did not influence or affect the judgments.''

The statute of Minnesota is as follows: ''Every railroad corporation owning or operating a railroad in this State shall be liable for all damages sustained by any agent or servant thereof, by reason of the negligence of any other agent or servant thereof, without contributory negligence on his part, when sustained within this State, and no contract, rule or regulation between such corporation and any agent or servant shall impair or diminish such liability: provided, that nothing in this act shall be so construed as to render any railroad company liable for damages sustained by any employee, agent or servant while engaged in the construction of a new road, or any part thereof, not open to public travel or use.''

The Supreme Court of that State adopts the same rule as that laid down in Iowa, to-wit, that the injuries must have been inflicted by the movement of a train, and holds that the statute so construed is not class legislation or violative of the Federal Constitution, but says that if the construction is extended beyond this it would be subject to those objections. [Johnson v. Railroad, 43 Minn. 222.]

The fellow-servant law of Indiana is the most sweeping and comprehensive of any. It is as follows:

''1. That every railroad or other corporation, except municipal, operating in this State, shall be liable in damages for personal injury suffered by any employee while in its service, the employee so injured being in the exercise of due care and diligence, in the following cases:

''First. When such injury is suffered by reason of any defect in the condition of ways, works, plant, tools and machinery connected with or in use in the business of such corporation, when such defect was the result of negligence on the part of the corporation,

or some person entrusted by it with the duty of keeping such way, works, tools or machinery in proper condition.

"Second. Where such injury resulted from the negligence of any person in the service of such corporation, to whose order or direction the injured employee at the time of the injury was bound to conform, and did conform.

"Third. Where such injury resulted from the act or omission of any person done or made in obedience to any rule, regulation or by-law of such corporation, or in obedience to the particular instructions given by any person delegated with the authority of the corporation in that behalf.

"Fourth. Where such injury was caused by the negligence of any person in the service of such corporation who has charge of any signal, telegraph office, switchyard, shop, roundhouse, locomotive engine or train upon a railway, or where such injury was caused by the negligence of any person, co-employee, or fellow-servant engaged in the same common service in any of the several departments of the service of any such corporation, the said person, co-employee or fellow-servant, at the time acting in the place, and performing the duty of the corporation in that behalf, and the person so injured, obeying or conforming to the order of some superior at the time of such injury, having the authority to direct; but nothing herein shall be construed to abridge the liability of the corporation under existing laws."

This statute came before the Supreme Court of the United States in Tullis v. Railroad, 175 U. S. 348, and the opinion of Mr. Chief Justice FULLER is so pertinent to the case at bar that it is deemed proper to reproduce it in full. It is as follows:

"The contention is that the act referred to is in conflict with the fourteenth amendment because it denies the equal protection of the laws to the corporations to which it is applicable.

"In Pittsburgh, etc., Railroad Company v. Mont-

gomery, 152 Indiana 1, the statute in question was held valid as to railroad companies, and it was also held that objection to its validity could not be made by such companies on the ground that it embraced all corporations except municipal, and that there were some corporations whose business would not bring them within the reason of the classification. In announcing the latter conclusion the court ruled in effect that the act was capable of severance; that its relation to railroad corporations was not essentially and inseparably connected in substance with its relation to other corporations; and that, therefore, whether it was constitutional or not as to other corporations, it might be sustained as to railroad corporations.

"In Leep v. Railway Company, 58 Arkansas 407, and St. Louis, Iron Mountain, etc., Railway v. Paul, 64 Arkansas 83, an act of Arkansas of March 25, 1889, was held unconstitutional by the Supreme Court of that State so far as affecting natural persons, and sustained in respect of corporations; and in St. Louis, Iron Mountain, etc., Railway v. Paul, 173 U. S. 404, that view of the act was accepted by this court because that court had so decided.

"Considering this statute as applying to railroad corporations only, we think it can not be regarded as in conflict with the fourteenth amendment. [Missouri Pacific Railway v. Mackey, 127 U. S. 205; Minneapolis & St. Louis Railway v. Herrick, 127 U. S. 210; Chicago, Kansas, etc., Railroad v. Pontius, 157 U. S. 209; Peirce v. Van Dusen, 47 U. S. App. 339; Orient Insurance Co. v. Daggs, 172 U. S. 557.]

"In Missouri Railway v. Mackey, the validity of a statute of Kansas of 1874 providing that 'every. railroad company organized or doing business in this State shall be liable for all damages done to any employee of such company in consequence of any negligence of its agents, or by any mismanagement of its engineers or other employees to any person sustaining such damage,' was involved, and it was held that it did not deny to railroad companies the equal protection of the laws.

Mr. Justice FIELD said: 'The hazardous character of the business of operating a railway would seem to call for special legislation with respect to railroad corporations, having for its object the protection of their employees as well as the safety of the public. The business of other corporations is not subject to similar dangers to their employees, and no objection, therefore, can be made to the legislation on the ground of its making an unjust discrimination. It meets a particular necessity, and all railroad corporations are, without distinction, made subject to the same liabilities. As said in the court below, it is simply a question of legislative discretion whether the same liability shall be applied to carriers by canal and stage coaches and to persons and corporations using steam in manufactories.'

"In Minneapolis, etc., Railway v. Herrick, the same conclusion was reached in respect of a law of the State of Iowa, that 'every corporation operating a railway shall be liable for all damages sustained by any person, including employees of such corporation, in consequence of the neglect of agents, or by any mismanagement of the engineers or other employees of the corporation, and in consequence of the willful wrongs, whether commission or omission, of such agents, engineers or other employees, when such wrongs are in any manner connected with the use and operation of any railway on or about which they shall be employed, and no contract which restricts such liability shall be legal or binding.'

"In Chicago, etc., Railroad v. Pontius, a bridge carpenter, employed by a railroad company, who was injured through the negligence of employees of the company while assisting in loading timbers, taken from the false work used in constructing a bridge, on a car for transportation to another point on the company's road, was held to be an employee of the company within the meaning of the statute of Kansas, and the validity of that act was again affirmed.

"In Peirce v. Van Dusen, a similar statute of the

State of Ohio applying to railroad companies was upheld by the Circuit Court of Appeals for the Sixth circuit, Mr. Justice HARLAN delivering the opinion of the court.

"In Orient Insurance Company v. Daggs, in which an act of the State of Missouri in respect of policies of insurance against loss or damage by fire was drawn in question, the objection that the statute discriminated between fire insurance companies and companies engaged in other kinds of insurance was overruled, and it was said that the power of the State to distinguish, select and classify objects of legislation necessarily had a wide range of discretion; that it was sufficient to satisfy the demands of the Constitution if the classification were practical and not palpably arbitrary, and that the classification of the Missouri statute was not objectionable in view of the differences between fire insurance and other insurance. Railroad Company v. Mackey, and Railroad Company v. Beckwith, 129 U. S. 26, were cited and approved. And see Magoun v. Ill. Trust and Savings Bank, 170 U. S. 283; Pacific Express Co. v. Seibert, 142 U. S. 339; Atchison, Topeka, etc., Railroad v. Matthews, 174 U. S. 96.

"By reason of the particular phraseology of the act under consideration it is earnestly contended that the decisions sustaining the validity of the statutes of Kansas, Iowa and Ohio are not in point, and that this statute of Indiana classified railroad companies arbitrarily by name and not with regard to the nature of the business in which they were engaged, but the Supreme Court of the State in the case cited has held otherwise as to the proper interpretation of the act, and has treated it as practically the same as the statutes of the States referred to. Indeed the Iowa statute is quoted from, and the case of Beckwith, as well as that of Mackey, relied on as decisive in the premises.

"As remarked in Missouri, Kansas, etc., Railway v. McCann, 174 U. S. 580, 586, the contention calls on this court to disregard the interpretation given to a state statute by the court of last resort of the State,

and, by an adverse construction, to decide that the state law is repugnant to the Constitution of the United States. 'But the elementary rule is that this court accepts the interpretation of a statute of a State affixed to it by the court of last resort thereof.'

"This being an action brought by Tullis to recover damages for an injury suffered while in the employment of the railroad company, caused by the negligent act of a fellow-servant, for which the company was alleged to be responsible by force of the act, we answer the question propounded that,

"The statute as construed and applied by the Supreme Court of Indiana is not invalid and does not violate the fourteenth amendment to the Constitution of the United States."

It thus appears that everywhere except in Iowa and Minnesota, the adjudications agree that it is not essential that the injury should have been inflicted by reason of the negligence of a fellow-servant while actually engaged in running a car, but that the injured employee may recover if injured by the negligence of a fellow-servant while they are engaged in doing any work for the railroad which was directly necessary for the operation of the railroad, and that even so sweeping a statute as that of Indiana was held by the Supreme Court of the United States, not to be repugnant to or violative of the Federal Constitution.

Under the language of our statute it is necessary for the injured employee to show that he was injured "while engaged in the work of operating such railroad." Construed either by its own terms or in the light of the cases cited from other jurisdictions, it results in holding that the right to recover is not limited to cases where the injury is inflicted by reason of the negligence of a fellow-servant while actually moving a train or engine, but that the law embraces all cases where the injury is inflicted upon an employee while engaged in the work of operating a railroad, by reason of the negligence of any fellow-servant who is likewise

engaged in the work of operating a railroad, and that the term "operating such railroad" includes all work that is directly necessary for running trains over a track, and that it includes section hands who are engaged in working upon, repairing or putting in shape the track, roadbed, bridges, etc., over which the trains must run.

## II.

The next question is whether the plaintiff falls within the class embraced in the act. Section gangs are included. The plaintiff was a member of the section gang that was doing the work. The work being done was directly necessary for the operation of the road. The particular work the plaintiff was doing was to warn passers-by of the danger incident to the negligent manner in which this work was being done, and to remove the ties from the street after the other members of the section gang had thrown them from the bridge to the street. Therefore, the work the plaintiff was doing was a part of the work being done by the section gang of which he was a member. It was negligence for the gang to throw the ties from the bridge down on to the street without first learning from the plaintiff that it was safe to do so. The practice before the accident was for them to first ascertain that fact from the plaintiff. In this instance they did not do so. They were negligent. The child was in a place of peril. The plaintiff went to it to remove it. He had a right to rely upon it that no ties would be thrown down until he notified the gang that it was safe to do so. He was therefore in the discharge of his duty. He was engaged in the work of operating the railroad. He was within the protection of the law. He was not guilty of contributory negligence. He is therefore entitled to recover, and, therefore, the verdict and judgment of the trial court is right.

The objection that the first portion of the plaintiff's instruction leaves it to the jury to determine as a

State ex rel. v. Eby.

question of fact whether the plaintiff was engaged in operating the railroad, while such was a question of law, is not tenable.    Whether the plaintiff was engaged in operating the railroad at the time he was injured was a mixed question of law and fact.    The instruction required the jury to find the fact to be that the plaintiff was ''a section-hand laborer, aiding in the work of operating defendant's road,'' and then declared that if such was the fact he was entitled to recover.    Properly construed this instruction only means that the jury must not only find the plaintiff to be a section-hand laborer but that he was at the time of the injury actually engaged in working upon the railroad as such.    The instruction, though perhaps not as clearly worded as it might have been, was not erroneous.    Finding no error in the record, the judgment of the circuit court is affirmed.

*Brace, P. J.,* and *Valliant, J.,* concur; *Robinson, J.,* dissents.