ERIE RAILROAD COMPANY *v.* WILLIAMS, AS COMMISSIONER OF LABOR OF THE STATE OF NEW YORK.

ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 274.   Argued April 27, 1914.—Decided May 25, 1914.

While it is a fundamental principle that personal liberty, includes the power to make contracts, the liberty of making contracts is subject to conditions in the interest of the public welfare, and whether that principle or those conditions shall prevail cannot be defined by any precise or universal formula. Each case must be determined by itself.

Each act of legislation has the presumption that it has been enacted in the public interest and the burden is on him who attacks it.

The burden of the party attacking a police regulation as unconstitutional under the due process clause is not sustained by the mere principle of liberty of contract; it can only be sustained by showing

that the statute conflicts with some constitutional restraint or does not subserve the public welfare.

The legislature is the judge in the first instance of whether a police regulation is necessary; judicial review is limited, and even an earnest conflict of public opinion does not bring the question of necessity within the range of judicial cognizance.

Cost and inconvenience to the party affected must be very great in order to justify the courts in declaring void the action of the State in exercising its reserved power over charters or its police power.

The effect of the reservation of the power to amend and alter charters of corporations is to make a corporation, from the moment of its creation, subject to the legislative power in those respects as a corporate body; and questions of expediency are for the legislature and not for the courts so long as the amendments or alterations do not defeat or substantially impair the object of the grant or rights vested thereunder.

Alteration of the manner or time of payment of employés does not defeat or substantially impair the object of the charter granted to a railroad corporation, and a state statute, otherwise valid, regulating such time and manner, is not unconstitutional as, impairing such charter.

Whether a statute imposes an unjust burden depends upon its validity; and whether the public welfare is subserved thereby is, in the first instance, to be determined by the legislature, whose action the courts will not review unless unmistakably and palpably in excess of legislative power. *McLean v. Arkansas*, 211 U. S. 539.

In determining time and manner of payment of wages of employés the legislature can consider the fact that to those who work for a living there is an advantage in the ready purchasing power of cash over deferred payments involving the use of credit.

Where Congress has not acted on the subject, and there is no prohibition on interstate commerce, a State may regulate matters within its police power although incidentally affecting interstate commerce.

Congress has not, as yet, acted in regard to the time and manner of payment of wages of employés of interstate carriers.

A state statute regulating periods of payment of wages of railroad employés' which is limited to the employés wholly within that State or whose duties take them from that State to other States and which is not applicable to those employed in other States, is not a direct burden on interstate commerce.

An employer cannot be heard to attack a state statute relating to payment of wages, on the ground that it denies to some of his employés

the equal protection of the law because they are not within its protection.

The provision of the Labor Law of New York of 1907 requiring semimonthly payments in cash of wages of employés of certain specified industries, including railroads, is not unconstitutional as denying due process of law, or, as to a railroad company incorporated in that State, as impairing the obligation of the charter contract; nor is it, as it has been construed by the highest court of that State, a direct burden on interstate commerce; but, as so construed, it is a valid exercise of the police power of the State.

Judgment based on 199 N. Y. 108, 525, affirmed.

Suit brought by plaintiff in error, the Erie Railroad Company (as it was plaintiff below we shall so designate it) to restrain the defendant in error (herein called defendant) from instituting actions to recover penalties for noncompliance with the provisions of the Labor Law of the State of New York (Laws of 1907, c. 415; General Laws, c. 32) which required plaintiff to pay its employés semimonthly and in cash.

The object of the suit is to test the constitutionality of the law.

The bill is very elaborate and alleges with much detail the following facts: Plaintiff is a New York corporation, and defendant is Commissioner of Labor of the State. Plaintiff maintains a railroad in New York which extends into other States, and operates car floats and other floating equipment, navigating the navigable waters of the United States. These and other equipment are used in the business of plaintiff as a common carrier of persons and property under and in compliance with tariffs duly promulgated and filed under the laws of the State and of the United States; and plaintiff is also a carrier of the United States mails. As a rule, the trains of plaintiff run over an operating division without change of employés. Some of the divisions are interstate and some wholly within the State of New York.

Plaintiff, in carrying out its functions, has in its service upon that portion of its road lying east of Meadville, Pennsylvania, upwards of 15,000 men, who are employed either wholly within or partially within the State of New York, and nearly all of them are employed in the movement of interstate commerce. The great majority of these employés render service in more than one State and many of them who reside in Pennsylvania or New Jersey render a part of their service in New York, and many who reside in the latter State render service in the other two States. The contracts of employment of many of them were made, and in the future must be made, in States other than New York, in which States they must reside.

By the laws of New York plaintiff was vested with its powers as a railroad and to contract and be contracted with for the employment of persons to conduct its operations and enterprises at and for such wages and upon such terms of payment as should or might be mutually agreed on; and thereunder it has been its custom to pay its employés monthly and thus pay them prior to or on the twentieth day of each month the wages earned during the preceding month.

The great majority of plaintiff's employés were in its service prior to January 1, 1908, and all accepted such service with full knowledge of its general and uniform custom so to pay its employés monthly.

Prior to January 1, 1908, there existed and has since existed a contract between plaintiff and its employés that the latter should be paid monthly as stated, and so to pay them, as distinguished from payment twice a month, is not inconsistent with the public interest or hurtful to the public order or detrimental to the common good.

Section 4 of Article I of the Labor Law of the State makes it malfeasance in office, for any officer, agent or employé of the State to violate or evade his duty under

the law or knowingly permit the violation or evasion of the act, and he is subject to removal from office.

Section 9 [1] provides that every railroad company and

---

[1] "SECTION 9. Cash payment of wages.—Every manufacturing, mining, quarrying, mercantile, railroad, street railway, canal, steamboat, telegraph and telephone company, every express company, every corporation engaged in harvesting and storing ice, and every water company, not municipal, and every person, firm or corporation, engaged in or upon any public work for the state or any municipal corporation thereof, either as a contractor or a sub-contractor therewith, shall pay to each employé engaged in his, their or its business the wages earned by such employé in cash. No such company, person, firm or corporation shall hereafter pay such employés in script, commonly known as store money-orders. (As amended by c. 443, Laws of 1908.)

"SECTION 10. When wages are to be paid.—Every corporation or joint-stock association, or person carrying on the business thereof by lease or otherwise, shall pay weekly to each employé the wages earned by him to a day not more than six days prior to the date of such payment. But every person or corporation operating a steam surface railroad shall, on or before the first day of each month, pay the employés thereof the wages earned by them during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month pay the employés thereof the wages earned by them during the last half of the preceding calendar month. (As amended by c. 442, Laws of 1908.)

"SECTION 11. Penalty for violation of preceding sections.—If a corporation or joint-stock association, its lessee or other person carrying on the business thereof, shall fail to pay the wages of an employé, as provided in this article, it shall forfeit to the people of the State the sum of fifty dollars for each failure, to be recovered by the factory inspector in his name of office in a civil action; but an action shall not be maintained therefor unless the factory inspector shall have given to the employer at least ten days' written notice that such an action will be brought if the wages due are not sooner paid as provided in this article.

" On the trial of such action, such corporation or association shall not be allowed to set up any defense, other than a valid assignment of such wages, a valid set-off against the same, or the absence of such employé from his regular place of labor at the time of the payment, or an actual tender to such employé at the time of the payment of the wages so earned by him, or a breach of contract by such employé or a denial of the employment."

certain other companies shall pay their employés in cash, and no such company shall pay its employés in script commonly known as store money-orders.

Section 10 requires the payment of employés' wages semi-monthly.

Section 11 imposes a penalty of $50 for each failure to so pay, to be recovered by the factory inspector in his name of office in a civil action, and limits the defenses to the action to a valid assignment of such wages, a valid set-off against the same, or the absence of such employé from his regular place of labor at the time of the payment or an actual tender at the time of the payment or a breach of contract by such employé or a denial of the employment.

The Commissioner of Labor is required to enforce the provisions of the law, and notified plaintiff of his intention to do so, and to sue for the penalties imposed by the act. He expressed his opinion of the act to be that each failure to pay the wages of each employé constituted a separate offense and that the aggregate of the penalties would be $250,000. Plaintiff believes, unless that officer is restrained, that he will exercise his authority under the act.

The employés of plaintiff are distributed over more than 1,819 miles and the making of the payment of their wages in money semi-monthly instead of monthly will impose upon and subject plaintiff to an increased cost and expense of several thousand dollars each month.

The difficulty of semi-monthly payments is described and it is alleged that the drastic and enormous penalties are, by reason of their necessarily aggregate character and effect, so excessive as to evidence legislative intention to unduly limit or prevent judicial inquiry, and practically constrain plaintiff to submit to the statute rather than by contesting its validity to take the chances of the penalties it imposes.

That the statute by its terms prevents plaintiff from

setting up in defense the contracts existing between it and its employés for the payment of their wages once a month. and that the statute violates, when applied to plaintiff, various provisions of the Constitution of the State and of the United States, and thereby is repugnant to Article III of the Constitution of the United States and Article VI of the constitution of the State of New York in that it is an invasion by the legislature of the judicial power; and it is also repugnant to § 1 of Article XIV of the Constitution of the United States and § 6, Article I of the constitution of the State of New York in that it deprives plaintiff of property without due process of law; and violates § 10, Article I, of the Constitution of the United States in that it impairs the obligation of contracts. The act in its other provisions deprives plaintiff of property without due process of law and of the equal protection of the laws. It also interferes with and impairs plaintiff's performance and discharge of its duties as a common carrier in interstate commerce, is not a valid exercise of the police power and is illegal and unenforceable and void under articles of the Constitution of the State and of the. United States which are enumerated.

By the enforcement of the act plaintiff will be subjected to enormous penalties, a multiplicity of suits and to great and irreparable damage, and plaintiff has no adequate remedy at law.

The answer of the defendant admitted the allegations of the complaint as to the statute and alleged that he intended to give such notice to plaintiff as to enforcing such penalties as he was required by the law to give and enforce. He denied that he had any knowledge or information sufficient to form a belief regarding the truth of the other allegations of the complaint.

A stipulation of facts was entered into by the parties upon which the court entered judgment dismissing the complaint. The judgment was successively affirmed by

the Appellate Division of the Supreme Court and by the Court of Appeals.

The facts stipulated practically sustain the allegations of the answer and detail the manner of the payment by plaintiff of its employés. The plaintiff also introduced in evidence an exhibit which classified its employés and showed the number of days work, total compensation and average compensation per day as per pay rolls for the year ending June 30, 1908. Its materiality was contested.

*Mr. Frederic D. McKenney*, with whom *Mr. George F. Brownell* was on the brief, for plaintiff in error:

The Labor Law of New York is repugnant to the Fourteenth Amendment, in that it deprives the company of property, and specifically deprives the company and those of its employés to whom it applies of liberty without due process of law.

Cases holding to the contrary can be distinguished.

The statute imposes upon the employers to whom it relates a burden that is unjust and a duty which it is impossible to perform.

The excess cost of paying employés twice a month as distinguished from once a month and the burden of care, labor, and responsibility imposed by the statute constitute a direct burden upon interstate commerce and violate the commerce clause of the Federal Constitution.

The statute violates the Fourteenth Amendment in that it denies to the employés of the Erie Railroad Company the equal protection of the laws.

Mechanics, workingmen, and laborers are not a dependent class as compared with other railway employés.

The classification is arbitrary in the fact that it places the burden upon a corporation and does not place it upon individuals and copartners engaged in the same business.

In support of these contentions, see *Adair* v. *United States*, 208 U. S. 161; *Atlantic Coast Line* v. *Wharton*, 207

· U. S. 328; *Beardsley* v. *N. Y., L. E. & W. R. R. Co.,* 162 N. Y. 230; *Bedford Quarries Co.* v. *Bough,* 168 Indiana, 671; *Braceville Coal Co.* v. *Illinois,* 147 Illinois, 66; *C., C., C. & St. L. Ry. Co.* v. *Illinois,* 177 U. S. 514; *Colon* v. *Lisk,* 153 N. Y. 188; *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540; Cooley's Const. Limitations, 7th ed., pp. 837 and 838; *Cotting* v. *Kansas City Stock Yards,* 183 U. S. 79; *Forster* v. *Scott,* 136 N. Y. 577; *Foster* v. *New Orleans,* 94 U. S. 246; *Galveston &c. R. R. Co.* v. *Texas,* 210 U. S. 217; *Gloucester Ferry Co.* v. *Pennsylvania,* 114 U. S. 196; *Godcharles* v. *Wegeman,* 113 Pa. St. 431; *Gulf, Col. &c. Ry. Co.* v. *Ellis,* 165 U. S. 150, 158; *Ill. Cent. R. R.* v. *Illinois,* 163 U. S. 142; *House Bill No. 1230,* 163 Massachusetts, 589; *Matter of Jacobs,* 98 N. Y. 98; *Johnson* v. *Goodyear Mining Co.,* 127 California, 4; *Kane* v. *Erie R. R. Co.,* 133 Fed. Rep. 681; *Lake Shore Ry. Co.* v. *Smith,* 173 U. S. 684; *Lawrence* v. *Rutland R. R. Co.,* 80 Vermont, 370; *Leep* v. *St. L. & I. M. R. R. Co.,* 58 Arkansas, 407; *Leisy* v. *Hardin,* 135 U. S. 100; *Lochner* v. *New York,* 198 U. S. 45; *Lord* v. *Equitable Life Assur. Soc.,* 194 N. Y. 212; *Moran* v. *New Orleans,* 112 U. S. 69; *Rodgers* v. *Coler,* 166 N. Y. 1; *People* v. *Gillson,* 109 N. Y. 389; *People* v. *Hawkins,* 157 N. Y. 1; *People* v. *Orange County Construction Co.,* 175 N. Y. 84; *People* v. *Williams,* 189 N. Y. 131; *Philadelphia S. S. Co.* v. *Pennsylvania,* 112 U. S. 326; *Robbins* v. *Shelby Co.,* 120 U. S. 489; *Republic Iron Co.* v. *Indiana,* 160 Indiana, 379; *San Antonio &c. Ry. Co.* v. *Wilson,* 19 S. W. Rep. 910; *Shields* v. *Ohio,* 95 U. S. 319; *Simpson* v. *Shepherd,* 230 U. S. 352, 398; *State* v. *Brown Mfg. Co.,* 18 R. I. 16; *Toledo, St. L. & W. R. Co.* v. *Long,* 169 Indiana, 316; *Wright* v. *Hart,* 182 N. Y. 330, 344.

*Mr. Joseph A. Kellogg,* with whom *Mr. Thomas Carmody,* Attorney General of the State of New York, and *Mr. Wilber W. Chambers* were on the brief, for defendant in error:

The courts will not overturn enactments of the legislature of a State unless the clearest and gravest reasons exist for so doing.

Legislative acts will be presumed to be constitutional, and if there is any doubt at all such doubt will be resolved in favor of the validity of legislative acts. *Sinking-Fund Cases*, 99 U. S. 700; *Sweet* v. *Rechel*, 159 U. S. 380; *Home Tel. Co.* v. *Los Angeles*, 211 U. S. 265, 281.

These statutes are a proper exercise of the reserved power to amend corporate charters, contained in the constitution of the State of New York. 1 Rev. Stat. 1827, 600, § 8; Const. N. Y., adopted in 1846 and revised in 1894, Art. VIII, § 1.

The constitutionality of these statutes may be upheld as to corporations under this reserved power of amendment. *Berea College* v. *Kentucky*, 211 U. S. 45. See also *Leep* v. *Railway Co.*, 58 Arkansas, 407.

As to the power of the State to amend corporate charters, see *Adirondack Railway Co.* v. *New York*, 176 U. S. 335; *New York & New Eng. R. R. Co.* v. *Bristol*, 151 U. S. 556, 567; *People* v. *O'Brien*, 111 N. Y. 1; *Greenwood* v. *Freight Co.*, 105 U. S. 13; *Lord* v. *Equitable Life Assur. Soc.*, 194 N. Y. 212.

The single limitation to this general rule is that the power may not be exercised to destroy property or rights guaranteed by the Fourteenth Amendment and by similar provisions of state constitutions. *St. L., I. M. &c. Ry.* v. *Paul*, 173 U. S. 404, 408; *State* v. *Brown Mfg. Co.*, 18 R. I. 16.

The reserved power to amend corporate charters is much greater than the police power. *Dartmouth College Case*, 4 Wheat. 518; *N. Y. & New Eng. R. R. Co.* v. *Bristol*, 151 U. S. 556.

The franchise to be a corporation may be entirely taken away, and the legislature may also prescribe the conditions and terms upon which it will allow the corporation to live

and exercise such franchise. It may enlarge or limit its powers, and increase or limit its burdens. It cannot subvert the purpose for which the corporation was formed by changing an insurance corporation to a railroad company, for instance, but short of that it would seem to have the right to make any regulation which in its judgment is desirable, so long as it does not deprive the corporation of property or impair the obligation of existing contracts. *Mayor* v. *Twenty-third St. R. R. Co.,* 113 N. Y. 311, 317; *Lord* v. *Equitable Life Assur. Soc'ty,* 194 N. Y. 212.

The provisions of the Labor Law here attacked are a legitimate exercise of the reserved power to amend because they relate simply to methods of internal administration to be followed by the corporations and do not deprive the corporations of any vested rights or subvert the purposes for which they were formed.

Regulation of methods of administration or internal management are included within the scope of this reserved power over corporate charters. *Lord* v. *Equitable Life Assur. Soc'ty,* 194 N. Y. 212.

See also *Berea College Case, supra; Sinking Fund Cases,* 99 U. S. 700; *Spring Valley Water Co.* v. *Schlotter,* 110 U. S. 347.

The present enactments are not subversive of the objects for which the corporations were formed and do not deprive them of vested rights.

These statutes are not unconstitutional as an exercise of the reserved power to amend corporate charters even if we should assume for argument's sake that they necessarily limited somewhat the freedom of contract of the employés of such corporations. *Red River Bank* v. *Craig,* 181 U. S. 548, 558; *Hatch* v. *Reardon,* 204 U. S. 152, 160, and cases cited.

These statutes do not deprive the employés of freedom of contract. So far as these are concerned, that question is merely academic. It can be raised only by the employés

themselves, and if they do not care to object to the law on that ground this plaintiff in error is not at liberty to do so.  *Yazoo & Miss. R. R. Co.* v. *Jackson Vinegar Co.*, 226 U. S. 217; *State* v. *Brown Mfg. Co.*, 18 R. I. 16.

The validity of similar laws has been frequently upheld by the courts of other States and by this court, upon this very ground.  *Peel Coal Co.* v. *West Virginia*, 36 W. Va. 802; *Leep* v. *Railway Co.*, 58 Arkansas, 407; *St. Louis &c. Ry. Co.* v. *Paul*, 64 Arkansas, 83, aff'd 173 U. S. 404; *Shaffer* v. *Union Mining Co.*, 55 Maryland, 74; *Skinner* v. *Garnett Mining Co.*, 96 Fed. Rep. 735, 744; *Atkin* v. *Kansas*, 191 U. S. 207.

The statutes are also constitutional as a proper and legitimate exercise of the police power of the State.

As to definition of police power, see *Holden* v. *Hardy*, 169 U. S. 366; *Jacobson* v. *Massachusetts*, 197 U. S. 11; *People* v. *Ewer*, 141 N. Y. 129; *Nechamcus* v. *Warden*, 144 N. Y. 529, 535.

In determining whether the legislature properly exercised this power, the court will take into consideration all facts of which it has judicial knowledge, including public records or reports, encyclopedias, laws of other States and the general or commonly accepted belief of the community. *Jacobson* v. *Massachusetts, supra; Knoxville Iron Co.* v. *Harbison*, 183 U. S. 13; *McLean* v. *Arkansas*, 211 U. S. 539.

The purpose of these acts is to benefit the community and the public in various ways, arising out of the protection which they afford to the large class of men employed by corporations.

The primary purpose of these laws, of course, is to secure to the laboring men the full value or purchasing power of their wages.  Cases *supra*, and *Arkansas Stave Co.* v. *Arkansas*, 125 S. W. Rep. 1001.

There is no valid objection to that part of the statute involved because it applies to corporations and not to natural persons.

A classification of steam railroad companies is proper and does not invalidate the statute for that reason. *Aluminum Co.* v. *Ramsey,* 222 U. S. 251; *Mutual Loan Co.* v. *Martell,* 222 U. S. 225; *Louis. & Nash. R. Co.* v. *Melton,* 218 U. S. 36: *Chi., R. I. & Pac. Ry. Co.* v. *Arkansas,* 219 U. S. 453.

MR. JUSTICE MCKENNA, after stating the case as above, delivered the opinion of the court.

The contention of plaintiff is that the Labor Law is repugnant to the Fourteenth Amendment "in that it deprives the company of property, and specifically deprives the company, and those of its employés to whom it applies, of liberty without due process of law." The contention may be limited at the outset to the rights of the company. It cannot complain for its employés; and before considering the contention thus limited, it is well to see what meaning or extent the Court of Appeals gave to the law.

The court decided that the law operates not only to require the railroads to pay their employés semi-monthly, but prohibits them from making contracts with their employés which shall vary the time of payment. If this were not the meaning of the law, the court said, neither railroads nor their employés would have any ground of complaint (199 N. Y. p. 114) "as both master and servant would be left at liberty to make any contract they pleased in regard to the time when the servant's wages should be payable and the medium in which they should be paid." This liberty not existing, the court stated the contention of the plaintiffs to be that the law deprives them "of the right of making contracts with their employés on advantageous terms, and that this is beyond the power of the legislature." The plaintiff also contended that it was denied the equal protection of the laws.

The opposing contentions were stated to be: (1) The legislation is a proper exercise of the power reserved by the constitution of the State to amend corporate charters; (2) It constitutes a legitimate exercise of the police power of the State.

The court rejected both contentions of plaintiff and sustained the law as an exercise of the power over plaintiff's charter; and, adverting to the objection that the requirement of semi-monthly payments was an unconstitutional interference with interstate commerce, the court said (p. 123): "It is to be observed that it [the law] is not in conflict with any legislation by Congress, nor does it affect interstate commerce directly." And, exhibiting the extent of the operation of the law, it was further said, "It relates to the wages of railway servants employed wholly within the State of New York as well as to the wages of those whose duties take them from this State into others. The subject is one upon which Congress has not undertaken to act."

How far the reserved power of the State over the charters of its corporations was helped out by its police power, the court gave no indication. Indeed, it may be said that in its reference to the reserved power in reviewing the decisions of other States, the sole ground of its decision was the possession and exercise of such power by the State. The court said (p. 127):

"There is an irreconcilable conflict in the decisions in different jurisdictions as to the constitutional validity of labor legislation fixing the medium and time of payment of the wages of those who work for corporations. After the foregoing review of the leading cases, I find no difficulty in sustaining our New York statute on the ground which has been stated. It does not confiscate corporate property directly or indirectly. It does impose a greater future burden upon the corporations to which it relates; but that, I think, is within the power of the legislature to the extent to which it has been exercised in this case."

The legislation having been passed in the exercise of the reserved power of the State, is it valid, notwithstanding it prohibits both the plaintiff and its employés from contracting against its provisions? Plaintiff asserts the negative and attempts to sustain the assertion by a very comprehensive argument in which a number of decisions of this court and of other courts are cited and reviewed. They illustrate by various instances the fundamental and indisputable principle that personal liberty includes the power to make contracts. But liberty of making contracts is subject to conditions in the interest of the public welfare, and which shall prevail—principle or condition—cannot be defined by any precise and universal formula. Each instance of asserted conflict must be determined by itself, and it has been said many times that each act of legislation has the support of the presumption that it is an exercise in the interest of the public. The burden is on him who attacks the legislation; and it is not sustained by declaring a liberty of contract. It can only be sustained by demonstrating that it conflicts with some constitutional restraint or that the public welfare is not subserved by the legislation. The legislature is, in the first instance, the judge of what is necessary for the public welfare, and a judicial review of its judgment is limited. The earnest conflict of serious opinion does not suffice to bring it within the range of judicial cognizance. *C., B. & Q. R. R. Co.* v. *McGuire,* 219 U. S. 549, 565; *German Alliance Insurance Co.* v. *Kansas, ante,* page 389.

In considering the competency of the legislative judgment and the power the courts have to review it, we may inquire, what is here complained of? What does the Labor Law of New York do that seriously affects the liberty of plaintiff? It requires cash payments. That requirement is not now resisted. It requires semi-monthly payments. Plaintiff now pays monthly. The extent of its grievance, therefore, is two payments a month instead of one, with

the consequence of expense and inconvenience. It is hardly necessary to say that cost and inconvenience (different words, probably, for the same thing) would have to be very great before they could become an element in the consideration of the right of a State to exert its reserved power or its police power. *New York & N. E. R. R. Co.* v. *Bristol*, 151 U. S. 556; *United States* v. *Un. Pac. Ry. Co.*, 160 U. S. 1; *St. Louis, I. M. &c. Ry. Co. v. Paul*, 173 U. S. 404; *Wisconsin &c. R. R. Co.* v. *Jacobson*, 179 U. S. 287. See also *Balt. & Ohio R. R. Co.* v. *Interstate Commerce Commission*, 221 U. S. 612.

Putting cost and inconvenience to one side, there would remain only an abstract right. Taking them into consideration they constitute the detriment to which plaintiff is subjected by not being able to make the forbidden contracts. It may be admitted an advantage is taken away from plaintiff, or, to put it another way, a burden is imposed upon it. Is it within the power of the State to impose the burden by virtue of its reserved control over plaintiff? The question must be answered as if the requirement of the law was part of the charter of plaintiff, and in such case it would seem certainly that a liberty of contract could not be asserted against it, for it would be a part of the contract accepted and binding on plaintiff,—a liberty exercised precluding a liberty to be exercised,—and it would seem necessarily to be the very essence of the right of amendment reserved that what could have been put in the charter originally, whatever its consequence, can be added to the charter, whatever the consequence of the addition. Of course, we mean what was and is competent for the State to impose, and we are brought to the narrow question whether a regulation of the time and manner of payment by a railroad of its employés is within the competency of the State to require. A negative answer is contended for, the argument urged to support the contention being that a contract right of dealing with its em-

ployés is conferred by plaintiff's charter, which right the Labor Law takes away and plaintiff is deprived of property because of the expense to which it is subjected, which, it is contended, is not justified by a corresponding public benefit. It would seem, therefore, to be the contention of plaintiff that it acquired by its charter a vested right to' deal with its employés according to its own judgment and, as alleged in its answer, that it was vested with its powers, as a railroad and to contract and be contracted with, for the employment of persons to conduct its operations and enterprises at and for such wages and upon such terms of payment as might or should be agreed on. In other words, it is the contention that the rights asserted are of the very essence of its grant, giving it the rights of a natural person and investing it with the same immunity from control whether exercised under the police power or the reserved power of amendment. We may, in answering the contention, put aside the rights of natural persons and the rights which might exist under a constitution which did not reserve control in the State. The effect of the control reserved was to make plaintiff, from the moment of creation, subject to the legislative power of alteration and, if deemed expedient, of absolute extinguishment as a corporate body. *Spring Valley Water Works* v. *Schottler*, 110 U. S. 347, 352. And whether expedient or not, is a question for the legislature, not for the courts. *Id.* 353. In other cases the effect of the reserved power of amendment is said to be to make any alteration or amendment of a charter subject to it which will not defeat or substantially impair the object of the grant or any right vested under the grant. *Lake Shore &c. Ry. Co.* v. *Smith*, 173 U. S. 684, 697, 698. *Looker* v. *Maynard*, 179 U. S. 46, 52. Surely the manner or time of paying employés does not come within such limitation. It is a matter of pure administration, not comparable in its burden to those sustained in the cases which we have already cited.

In *St. Louis, Iron Mt. & S. Ry. Co.* v. *Paul, supra,* a law of Arkansas was sustained as an exercise of the reserved power of the State which required a railroad company discharging with or without cause, or refusing to employ, any servant or employé, to pay him his unpaid wages, then earned at the contract rate, without abatement or deduction, to the date of his discharge, and providing that if the same be not paid on such day, then, as a penalty for non-payment, his wages shall continue at the same rate until paid.

In *New York & N. E. Railroad Co.* v. *Bristol, supra,* the railroad company was required to remove various grade crossings at its own expense.

In the *Sinking Fund Cases,* 99 U. S. 700, legislation requiring the creation of a sinking fund was sustained under the reserved power of amendment, and, after reviewing the cases, the court said (p. 721) "that whatever rules Congress might have prescribed in the original charter for the government of the corporation in the administration of its affairs, it retained the power to establish by amendment." Many other cases might be cited, but to cite them would be to accumulate authorities on a proposition which might well be taken at this late day to be incontestable. Indeed, the contention of defendant that the legislation under review might be supported under the police power of the State has justification in cases.

In *Knoxville Iron Co.* v. *Harbison,* 183 U. S. 13, a law of the State of Tennessee which required all persons and corporations to redeem in money evidences of indebtedness given to their laborers or employés, in the hands of their laborers, employés, or a *bona fide* holder, came up for consideration. The Knoxville Coal Company paid its employés in cash and in coal orders. It made money by the practice. There was no proof of an express agreement between the company and its employés that the orders should be paid only in coal, except as implied from

accepting the orders, and no proof of an implied agreement except as drawn from the face of the orders and the custom of the company. There was no proof of compulsion except that if the employés did not accept pay in coal orders they had to submit to be in arrears about twenty days, but the company paid in coal orders the whole wages due at the end of each month. Harbison purchased a number of the coal orders and demanded their payment in cash, which was refused. He then brought suit against the company, relying on the statute. The Supreme Court gave him judgment, which was affirmed by this court on the ground that the law was a proper exercise of the police power of the State. This court, by Mr. Justice Shiras, commenting on *St. Louis, Iron Mt. & S. Ry. Co.* v. *Paul, supra,* said that in that case stress was laid upon the reserved power of amendment which the State had (p. 22), "but it is also true that, inasmuch as the right of contract is not absolute in respect to every matter, but may be subjected to the restraints demanded by the safety and welfare of the State and its inhabitants, the police power of the State may, within defined limitations, extend over corporations outside of and regardless of the power to amend charters. *Atchison, Topeka & Santa Fe Railroad* v. *Matthews,* 174 U. S. 96." The ruling was followed in *Dayton Coal & Iron Company* v. *Barton* (183 U. S. 23), although the Dayton Company was not incorporated under the laws of Tennessee.

In *McLean* v. *Arkansas,* 211 U. S. 539, a law of Arkansas required, where miners were employed at quantity rates, and more than ten were employed, that they should be paid by the weight of coal mined by them as it comes from the mine and before it was passed over a screen of any kind. One of the grounds of attack on the law was that it was an unwarranted invasion of the right of contract secured by the Fourteenth Amendment, the argument being that the law prevented the miners from con-

tracting for wages upon the basis of screened coal instead of the weight of the coal as originally produced at the mine. The law was sustained as a proper exercise of the police power of the State.

It is, however, contended by plaintiff that the law under review cannot be sustained either as an exertion of the police power or as an alteration of the charter of plaintiff unless the court can say from a comparison of the systems of payment—monthly and semi-monthly—that the former affects adversely the general welfare or public good and the latter "remedies that evil or condition and of itself does not constitute an unjust burden upon the employer." But whether the law imposes an unjust burden depends upon its validity, and whether the public welfare is subserved by one system or the other is, as we have said, in the first instance, for the legislature to determine, and its judgment will not be reviewed unless "unmistakably and palpably in excess of legislative power." *McLean* v. *Arkansas, supra*, 211 U. S. p. 547. The Labor Law of New York cannot be so characterized.

There are certainly advantages of cash payment over deferred payments, and an advantage to those who work for a living of a ready purchasing power for their needs over the use of credit. This is found as a fact by the trial court, and even if there is no affirmative evidence of it, it is the expression of experience.

The next contention of plaintiff is that the cost of paying twice a month is a direct burden on interstate commerce. It is not necessary to review and compare the cases in which this court has pointed out the difference between a direct and indirect burden of state legislation upon interstate commerce or the power of the States in the absence of regulation by Congress. It is enough to say in the present case that Congress has not acted, and there is not, therefore, that impediment to the law of the State; nor is there prohibition in the character of the burden. The

effect of the provision is merely administrative and so far as it affects interstate commerce it does so indirectly. The Court of Appeals, as we have seen, considered that the law relates to the wages of railway servants employed wholly within the State and to those whose duties take them from the State into other States. In other words, did not make it applicable to those employed in other States, and it therefore does not embrace all of the employés of plaintiff, and the contention based upon its application to all is without foundation.

The last contention of plaintiff is that the statute violates the Fourteenth Amendment, "in that it denies to the employés of the Erie Railroad Company the equal protection of the laws." Considerable argument is made to support the contention, in which a comparison is made between the employés, mechanics, workmen and laborers, to whom the law applies, and the other employés of the company, and it is declared that all, if any, suffer from monthly payments and all are entitled, therefore, to receive the benefit of semi-monthly payments. But, as we have said, employés are not complaining, and whatever rights those excluded may have, plaintiff cannot invoke.

*Judgment affirmed.*