PEOPLE v. DAVIS.

(Court of Special Sessions, New York County. July, 1915.)

1. INDICTMENT AND INFORMATION ☞110(3)—INFORMATION—ACCEPTANCE OF SECRET COMMISSION—CRIMINAL RESPONSIBILITY.

Penal Law (Consol. Laws, c. 40) § 439, prohibits persons from offering, or agents or servants from accepting, commissions on purchases made by them for the principal or master, if without knowledge of the principal or master, and further makes such acts an offense regardless of the principal's knowledge, if done by or with an authorized purchasing agent. *Held*, that an information in the statutory words of the second division is sufficient, although it fails to charge the principal's lack of knowledge.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 291–294; Dec. Dig. ☞110(3).]

2. CONSTITUTIONAL LAW ☞250—EQUAL PROTECTION—STATUTES REGULATING —SECRET COMMISSIONS.

Such act is not unconstitutional, as singling out a certain class of citizens for aggressive discrimination.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 711–713; Dec. Dig. ☞250.]

3. CONSTITUTIONAL LAW ☞89(1)—OBLIGATION OF CONTRACTS—STATUTES REGULATING—SECRET COMMISSIONS.

Such act is not unconstitutional as curtailing the right of purchasing agents to contract.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 157; Dec. Dig. ☞89(1).]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. MASTER AND SERVANT ⬉342—SECRET COMMISSIONS.

Such act is based on public policy and within the police power.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1287; Dec. Dig. ⬉342.]

Albert Davis, being charged with a misdemeanor, demurred to the information. Demurrer disallowed.

Argued before RUSSELL, C. J., and COLLINS and O'KEEFE, JJ.

Charles Albert Perkins, Dist. Atty., of New York City (Floyd H. Wilmot, Deputy Asst. Dist. Atty., and Don. C. Buell, Deputy Asst. Dist. Atty., all of New York City, of counsel), for the People.

House, Grossman & Vorhaus, of New York City (Moses H. Grossman, of New York City, of counsel), for defendant.

RUSSELL, C. J. The information charges that, on the 21st day of April, 1914, at the city and county of New York, in violation of section 439 of the Penal Law, Albert Davis, the defendant in the above-entitled action—

"unlawfully gave and offered to Sheridan Gorton, Jr., who was then agent, employé, and servant of the association called R. H. Macy & Co., and who was then authorized to procure materials, supplies and other articles by contract for his said principal and employer, the sum of $10 in lawful money of the United States of America, as a commission, discount, and bonus from the said defendant, who then and there made and had made a sale of certain sponges to the said association, and a contract for the sale of certain sponges to the said association, and furnished the said sponges to the said association, against the form of the statute made and provided, and against the peace of the people of the state of New York and their dignity."

Section 439 of the Penal Law reads as follows:

"Whoever gives, offers or promises to an agent, employé or servant, any gift or gratuity whatever, without the knowledge and consent of the principal, employer or master of such agent, employé or servant, with intent to influence his action in relation to his principal's, employer's or master's business; or an agent, employé or servant who without the knowledge and consent of his principal, employer or master, requests or accepts a gift or gratuity or a promise to make a gift or to do an act beneficial to himself, under an agreement or with an understanding that he shall act in any particular manner to his principal's, employer's or master's business; or an agent, employé or servant, who, being authorized to procure materials, supplies or other articles either by purchase or contract for his principal, employer or master, or to employ service or labor for his principal, employer or master, receives directly or indirectly, for himself or for another, a commission, discount or bonus from the person who makes such sale or contract, or furnishes such materials, supplies or other articles, or from a, person who renders such service or labor; and any person who gives or offers such an agent, employé or servant such commission, discount or bonus shall be guilty of a misdemeanor and shall be punished by a fine of not less than ten dollars nor more than five hundred dollars, or by such fine and by imprisonment for not more than one year."

The defendant demurs to the information, upon the ground that it fails to state facts sufficient to constitute a crime, and urges that the last clause of section 439 of the Penal Law, under which the information in this case was drawn, is repugnant to article 1, § 10, of the Constitution of the United States, and to the Fourteenth Amendment

thereto, and is therefore null and void, and that said clause is likewise repugnant to article 1, §§ 1 and 6, of the Constitution of the state of New York.

[1-4] Section 439 of the Penal Law is divisible into two parts. The first forbids a gratuity to an employé of another in respect to his work or employment under certain conditions, "without the knowledge and consent of the employers." With this part of the statute we have nothing to do. The information was drawn under the wording of the second division, follows the words of the statute, and is therefore sufficient. People v. King, 110 N. Y. 418, 18 N. E. 245, 1 L. R. A. 293, 6 Am. St. Rep. 389.

The second division of the statute flatly forbids a purchasing agent from receiving from a seller a commission on a sale made through the purchasing agent acting on behalf of his employer, and likewise unqualifiedly forbids such seller's giving or offering such commission to such purchasing agent. The matter of knowledge or consent of the employer is eliminated from the transaction, is not alleged in the information, and needs not be proved by the people.

The defendant's counsel urges that the statute in question is obnoxious to both the state and federal Constitutions, and is unconstitutional, in that: (1) It has singled out for an aggressive discrimination a certain class of citizens, viz., purchasing agents; (2) it curtails their right to contract and the right to contract of persons dealing with them and of their employers; and (3) no sufficient justification in the health, morals, or welfare of the community is discernible to justify the consequences imposed by the statute.

Article 1, § 10, of the Constitution of the United States reads:

"No state shall * * * pass any * * * law impairing the obligation of contracts."

The Fourteenth Amendment thereto reads in part:

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Article 1, § 1, of the Constitution of the State of New York provides as follows:

"No member of this state shall be disfranchised, or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land, or the judgment of his peers."

And section 6 of the same article reads:

"No person shall be * * * deprived of life, liberty or property without due process of law; nor shall private property be taken for public use, without just compensation."

Every presumption is in favor of the validity of a statutory enactment.

"The question whether the act under consideration is a valid exercise of legislative power is to be determined solely by reference to constitutional restraints and prohibitions. * * * No law can be pronounced invalid, for the reason simply that it violates our notions of justice, is oppressive and

unfair in its operation, or because, in the opinion of some or all of the citizens of the state, it is not justified by public necessity, or designed to promote the public welfare. * * * The remedy for unjust or unwise legislation, not obnoxious to constitutional objections, is to be found in a change by the people of their representatives, according to the methods provided by the Constitution." Bertholf v. O'Reilly, 74 N. Y. 509, 30 Am. Rep. 323.

"We cannot overturn a statute because we do not like it, for our likes and dislikes affect us as citizens, not as judges." Wright v. Hart, 182 N. Y. 330, 353, 75 N. E. 404, 2 L. R. A. (N. S.) 338, 3 Ann. Cas. 263.

"It is not a good objection to a statute prohibiting a particular act and making its commission a public offense that the prohibited act was before the statute lawful or even innocent. * * * It is the province of the Legislature to determine in the interest of the public what shall be permitted or forbidden, and the statutes contain very many instances of acts prohibited, the criminality of which consists solely in the fact that they are prohibited, and not at all in their intrinsic quality." People v. West, 106 N. Y. 293, 12 N. E. 610, 60 Am. Rep. 452.

In the case of People v. Charles Schweinler Press, 214 N. Y. 395, 108 N. E. 639, in which that portion of the Labor Law (Consol. Laws, c. 31) which provides that no woman shall be employed or permitted to work in any factory in this state before 6 o'clock in the morning or after 10 o'clock in the evening of any day was held to be constitutional, Hiscock, J., says:

"In considering legislation adopted for such a purpose, we must start out with the presumption that it is constitutional and valid. People ex rel. Kemmler v. Durston, 119 N. Y. 569, 577 [24 N. E. 6, 7 L. R. A. 715, 16 Am. St. Rep. 859]. If the statute upon its face appears to be reasonable and just and appropriate, and we can fairly believe that its natural consequences will be in the direction of betterment of public health and welfare, and therefore that it is one which the state for its protection and advantage may enact and enforce, it will be the duty of the courts to pronounce it constitutional, even though they should doubt its wisdom. People v. Klinck Packing Co., 214 N. Y. 121 [108 N. E. 278]; Holden v. Hardy, 169 U. S. 366, 395 [18 Sup. Ct. 383, 42 L. Ed. 780]. Or, to state the rule in a converse form, before we can pronounce such a statute as that now before us unconstitutional, we must be able to see either that there is no real, substantial evil of public interest to be guarded against, or that there is no reasonable relation between the evil and the purported cure or prevention offered by the statute. Booth v. Illinois, 184 U. S. 425 [22 Sup. Ct. 425, 46 L. Ed. 623]; Chicago, B. & Q. R. R. v. McGuire, 219 U. S. 549 [31 Sup. Ct. 259, 55 L. Ed. 328]."

Counsel for the defendant argues that the statute upon which the information in the case at bar is based is unconstitutional, because it has singled out for an aggressive discrimination a certain class of citizens, viz., purchasing agents. He claims that this is class legislation. In the case of Barbier v. Connolly, 113 U. S. 27, 5 Sup. Ct. 357, 28 L. Ed. 923, Mr. Justice Field writes at length on this subject. He says:

"The Fourteenth Amendment, in declaring that no state 'shall deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.' undoubtedly intended, not only that there should be no arbitrary deprivation of life or liberty, or arbitrary spoliation of property, but that equal protection and security should be given to all under like circumstances in the enjoyment of their personal and civil rights; that all persons should be equally entitled to pursue their happiness and acquire and enjoy property; that they should have like access to the courts of the country for the protection of their persons and property, the prevention and redress of wrongs, and the

enforcement of contracts; that no impediment should be interposed to the pursuits of any one, except as applied to the same pursuits by others under like circumstances; that no greater burdens should be laid upon one than are laid upon others in the same calling and condition; and that in the administration of criminal justice no different or higher punishment should be imposed upon one than such as is prescribed to all for like offenses. * * * Though, in many respects, necessarily special in their character, they do not furnish just ground of complaint, if they operate alike upon all persons and property under the same circumstances and conditions. Class legislation, discriminating against some and favoring others, is prohibited; but legislation which, in carrying out a public purpose, is limited in its application, if within the sphere of its operation it affects alike all persons similarly situated, is not within the amendment."

In the second place the defendant's counsel urges that the statute in question is unconstitutional, because it curtails the right of purchasing agents or those employing labor for their employers to contract, and also the right to contract of persons dealing with them and of their employers. The doctrine is now definitely established that the constitutional right to liberty includes freedom to pursue any trade or calling and to make contracts not injurious to public policy. The rule of law is not limited to freedom from corporal restraint. As early as 1867 Baron Bramwell, upon the trial of an indictment for picketing, said:

"Liberty was not liberty of the body only. It was always a liberty of the mind and will; and the liberty of a man's mind and will to say how he should bestow himself and his means, his talents and his industry, was as much a subject of the law's protection as was that of his body." Regina v. Druitt, 10 Cox, Cr. Cas. 592, 600.

Thirty years later, in 1897, the Supreme Court of the United States announced the same doctrine in the now famous case of Allgeyer v. Louisiana, 165 U. S. 578, 17 Sup. Ct. 427, 41 L. Ed. 832. Mr. Justice Peckham, writing for a unanimous court, said in part:

"The liberty mentioned in that amendment [to the Constitution of the Union] means not only the right of a citizen to be free from the mere physical restraint of his person as by incarceration, but the term is deemed to embrace the right of the citizen to be free in the enjoyment of all, of his faculties, to be free to use them in all lawful ways, to live and work where he will, to earn his livelihood by any lawful calling, to pursue any livelihood or avocation, and for that purpose to enter into all contracts which may be proper, necessary, and essential to his carrying out to a successful conclusion the purposes above mentioned. * * * This," he continues, "does not interfere in any way with the acknowledged right of the state to enact such legislation in the legitimate exercise of its police or other powers as to it may seem proper."

The courts of New York have now definitely established and enforced the rule that the constitutional right to liberty includes liberty to pursue a trade and to make contracts not injurious to public policy, instead of being confined to freedom from corporal restraint. Matter of Jacobs, 98 N. Y. 98, 50 Am. Rep. 636; People v. Marx, 99 N. Y. 377, 2 N. E. 29, 52 Am. Rep. 34; People ex rel. Tyroler v. Warden, 157 N. Y. 116, 51 N. E. 1006, 43 L. R. A. 264, 68 Am. St. Rep. 763.

Historically it is doubtless true that the framers of the Constitution never intended to include liberty of contract in the general guaranty of liberty inherited from Magna Charta.

"The right of personal security,'" says Blackstone, "consists in a person's legal and uninterrupted enjoyment of his life, his limbs, his body, his health and his reputation. * * * This personal liberty consists in the power of locomotion, of changing situation, or moving one's person whatsoever place one's own inclination may direct, without imprisonment, or restraint unless by due process of law." 4 Bl. Comm. p. 424.

The Great Charter confines this notion of liberty to bodily liberty alone. The proceedings of the early constitutional conventions and all the debates in Congress contain no suggestion that liberty was otherwise conceived than as freedom from corporal constraint. Only imprisonment and slavery were intended to be prohibited.

The decision in the Allgeyer Case is in line with the current of modern thought, and is a step in advance in the progress of the courts toward a general superintendence of the legislative department of government. But the constitutional protection of liberty of contract does not prevent the exercise by the states of their police power. This police power of the states permits the regulation of contracts, and in some cases the prohibition of acts that endanger the public morals, and also such as present unusual danger of fraud and imposition.

The Legislature has full power to prevent fraud by regulating sales. This includes the power to regulate weights and measures. House v. Mayes, 219 U. S. 270, 31 Sup. Ct. 234, 55 L. Ed. 213. Banking and insurance may similarly be controlled by legislation. Shallenberger v. First State Bank, 219 U. S. 114, 31 Sup. Ct. 189, 55 L. Ed. 117; German Alliance Ins. Co. v. Hale, 219 U. S. 307, 31 Sup. Ct. 246, 55 L. Ed. 229. Every act of legislation has the support of the presumption that it has been enacted in the interest of the public. The burden of proof is on him who attacks the validity of a statute, and he must demonstrate that the statute conflicts with some constitutional restraint, or that the public welfare is not subserved by the legislation. In the first instance the Legislature is the judge of what is necessary for the public welfare, and there is but a limited judicial review of its judgment. Erie R. R. Co. v. William, 233 U. S. 685, 34 Sup. Ct. 761, 58 L. Ed. 1155.

Without doubt the government has the power to restrain some individuals from making all contracts and also to prevent all individuals from making some contracts. No one may enter into a contract which contravenes public policy. The possession of this power by the government does not conflict with the proposition that, generally speaking, every citizen may freely contract for the price of his labor, services, or property. Frisbie v. United States, 157 U. S. 160, 15 Sup. Ct. 586, 39 L. Ed. 657. In his opinion in the case of Chicago, B. & Q. R. R. v. McGuire, 219 U. S. 549, 31 Sup. Ct. 259, 55 L. Ed. 328, Mr. Justice Hughes says:

"Freedom of contract is a qualified and not an absolute right. There is no absolute freedom to do as one wills or to contract as one chooses. The guaranty of liberty does not withdraw from legislative supervision that wide department of activity which consists of the making of contracts, or deny to government the power to provide restrictive safeguards. Liberty implies the

absence of arbitrary restraint, not immunity from reasonable regulations and prohibitions imposed in the interests of the community."

In the recent case of Atlantic Coast Line v. Riverside Mills, 219 U. S. 186, 31 Sup. Ct. 164, 55 L. Ed. 167, 31 L. R. A. (N. S.) 7, Mr. Justice Lurton, says:

"It is obvious, from the many decisions of this court, that there is no such thing as absolute freedom of contract. Contracts which contravene public policy cannot be lawfully made at all, and the power to make contracts may in all cases be regulated as to form, evidence, and validity as to third persons. The power of government extends to the denial of liberty of contract to the extent of forbidding or regulating every contract which is reasonably calculated to injuriously affect the public interests."

There are many regulations respecting the pursuit of a lawful trade or business. The state in the exercise of its police power has the right to determine what these regulations shall be, and federal interference is not warranted unless these regulations are utterly unreasonable, and arbitrarily injure or destroy personal and property rights of citizens without due process of law. Gundling v. Chicago, 177 U. S. 183, 20 Sup. Ct. 633, 44 L. Ed. 725.

The statute in question in no sense prohibits contracts from being made for the sale of goods. It only prohibits agents from considering their own personal welfare, and from making contracts which are favorable to themselves regardless of the fact that such contracts are not favorable to their employers. It lets in 'the personal element of the agent. His judgment is likely to be biased by the thought of the profit which may come to him. He thinks first of himself and secondly of his principal.

In the third place, the counsel for the defendant urges that the statute in question is unconstitutional, in that no sufficient justification in the health, morals, or welfare of the community is discoverable to justify the wrongful consequences imposed by the statute. In Hearn v. Schuchman, 150 App. Div. 476, 135 N. Y. Supp. 52, there was an agreement between the plaintiff's employés and the defendant, with intent to defraud the plaintiff, that the plaintiff's employés would give orders to the defendant to furnish unnecessary supplies and material, and to do unnecessary work and labor for the plaintiff, and to charge excessive and extravagant prices for such materials and supplies and for such work, labor, and services, and to furnish defective and faulty labor and services for the plaintiff below the grade and quality of the supplies, materials, labor, and services desired and required by the plaintiff, and to make false charges against the plaintiffs for supplies and materials never furnished, and for labor and services never performed, and in divers other ways to cheat and defraud the plaintiffs. In this case all such acts agreed upon were actually done.

By a study of the facts of the above case, it can readily be seen what dangerous practices would be likely to result in case the statute now in question should be declared to be unconstitutional. In the famous Bakers' Case (Lochner v. New York, 198 U. S. 45, 25 Sup. Ct. 539, 49 L. Ed. 937, 3 Ann. Cas. 1133) the employé was to furnish legitimate labor. He was to work longer hours and receive

greater pay. His employer would be benefited by the number of hours the employé worked. In the case at bar the action of the buyer was not in the interests of his employer. His action was in his own interest, coupled with that of the vendor. At all times an agent should subordinate his own personal interests to those of his principal. In the Bakers' Case the matter was between the employer and employé only; in the case at bar it was between the employé and an outside party, namely the vendor. In the Lochner Case the court decided that the statute forbidding bakers to work more than 60 hours in a week or 10 hours a day was unconstitutional, and said in part:

"The trade of a baker, in and of itself, is not an unhealthy one to that degree which would authorize the Legislature to interfere with the right to labor, and with the right of free contract on the part of the individual, either as employer or employé. * * * It might be safely affirmed that almost all occupations more or less affect the health. There must be more than the mere fact of the possible existence of some small amount of unhealthiness to warrant legislative interference with liberty. It is unfortunately true that labor, even in any department, may possibly carry with it the seeds of unhealthiness. It seems to us that the real object and purpose were simply to regulate the hours of labor between the master and his employés (all being men, sui juris) in a private business, not dangerous in any degree * * * to the health of the employés. Under such circumstances the freedom of master and employé to contract with each other in relation to their employment, and in defining the same, cannot be prohibited or interfered with, without violating the federal Constitution."

The significance of section 439 of the Penal Law, taken as a whole, is this, namely, that secret commissions are to be condemned because they prompt a servant to betray his master, and thus prejudice the master's interests in consideration of pay received from others. Obviously the gravamen of this charge lies in the secrecy of such transactions. The master believes, and has reason to believe, that he is being served without stint or qualification by his employé, who is devoting the full measure of his time and attention without diminution to his employer's interests exclusively. The evil aimed at is in the service of two masters, whose interests are necessarily and forever antagonistic.

But if the bonus or commission paid to another's agent is fully known to the employer of such agent, how can we say that this is a secret commission, and that the employer has been dealt with treacherously and betrayed? Much of the world's business has been in the course of years adjusted to conditions which involve, and even necessitate, the giving of tips, so called. The tips to barbers, to stewards on ocean steamships, to waiters in hotels and restaurants, and to porters on parlor cars are within the knowledge of all who have the least familiarity with these branches of business. No one can successfully contend that there is any fraud or deception lurking in these transactions, or that anybody is injured, whether the employer, or employé, or the customer. When these so-called gratuities are definitely contemplated from the beginning, and are regarded as a necessary and inevitable feature of certain business transactions, and made so by a custom which has almost ripened into law, such business as a whole becomes firmly adjusted to the giving and receiving of such

gratuities. After such adjustment has been finally fixed, the repudiation by the customer of his so-called duty to pay a bonus injures nobody except the employé, who may well be regarded as having taken this chance of repudiation through his own choice; surely the employer is neither deceived nor injured, and the customer gets his goods or the services rendered at less than their fair cost.

Now, none of the foregoing transactions are within the purview of this statute. No knowledge or consent on the part of the principal is mentioned in the clauses of the statute now under discussion; and we find the said statute applying specifically to two cases only, namely, the purchasing of material through a purchasing agent, and the employment of labor secured through the services of an agent. The statute is zealous to banish the very appearance of evil, and requires of such an agent complete and unswerving devotion to his one master. Business experience demonstrates the necessity for such a statutory bulwark of fidelity. Without such a statute, under the fierce competition of modern life, purchasing agents and agents to employ labor can be lured all too readily into the service of hopelessly conflicting interests. Nor is this a mere matter of metaphysical speculation. Adjudications like Hearn v. Schuchman, supra, illustrate all too clearly the need of such a statutory safeguard. Sound public policy, commercial honor, and the good faith of fiduciaries and trusted employés imperatively demand some such measure in the written law.

The statute in the case at bar divests no property and harms no vested right. It is not in any sense class legislation, because it applies generally to all workers in a certain definite occupation. Such customs of trade as are denounced by this statute are demoralizing to society. Acts harmful to morals are not, as contended by defendant, limited to sexual impurity and obscene publications. Bribery of purchasing agents is incompatible with commercial honor. A bonus or commission, secretly given, is nothing short of a bribe to betray one's employer. The only possible object of this bad custom is to take money from the principal and give it to his agent. No lawful business is forbidden by this act. No one is compelled by law to become a purchasing agent, and there is no limit set by statute to the commissions that can be received.

This discussion has been prolonged, because, so far as known, the courts have not passed upon the exact question raised in this case. We conclude that section 439 of the Penal Law is constitutional. It is not class legislation, and restricts no right of contract. The information is sufficient, and states a good cause of action. As lack of knowledge on the part of the principal is not a necessary element of the crime, it need not be alleged or proved, and is no defense to the information.

It follows that the demurrer should be disallowed.

COLLINS and O'KEEFE, JJ., concur in the result.